[L. A. No. 2165. Department One.—December 16, 1908.]

## ALLEN CRAGG, Respondent, v. LOS ANGELES TRUST COMPANY, Appellant.

NEGLIGENCE—UNLICENSED ELEVATOR OPERATOR—MUNICIPAL ORDINANCE. —The failure of the owner of a building to comply with the provisions of a municipal ordinance by hiring and permitting to operate an elevator one who was not licensed is negligence *per se*.

ID.—MASTER'S LIABILITY FOR INCOMPETENT SERVANT — INJURY TO FELLOW-SERVANT.—Under section 1970 of the Civil Code, as it stood in October, 1906, an employer is liable to an employee for injuries resulting from the mere negligence of a fellow-servant, where he had failed to use ordinary care in the selection of such fellow-servant.

ID.—EMPLOYMENT OF UNLICENSED OPERATOR—PROOF OF NEGLIGENCE.— The employment by the owner of a building of an unlicensed elevator operator, in violation of the terms of a municipal ordinance requiring such operators to be examined and licensed, is, in the absence of any excusing evidence, conclusive proof of negligence on the part of the employer in the selection of the operator, rendering him liable to any other co-employee for damages caused by the negligence of the operator.

ID.—CARE IN SELECTION OF SERVANT—DUTY CANNOT BE DELEGATED.— Such duties of an employer as are personal to him, including the duty to use ordinary care in the selection of fellow-servants, cannot be delegated to another servant. When such duties are confided to another employee, such employee, in the performance of those duties, is the representative of the employer and not a fellow-servant.

ID.—ORDINANCE ADMISSIBLE IN EVIDENCE WITHOUT BEING PLEADED.— In an action by an employee to recover damages for the negligence of the master in the operation of an elevator, which negligence was alleged to have consisted in the employment of an inexperienced and unsafe elevator operator, through whose negligence the accident was

occasioned, a municipal ordinance requiring all such operators to be examined and licensed is admissible in evidence without being specially pleaded. And the same is true of evidence that the operator occasioning the injury had never been licensed.

ID.—EVIDENCE OF NON-REPEAL OF ORDINANCE.—In such an action, the ordinance is simply evidence of the obligation resting on the master in the selection of his employees, and it was not necessary for the plaintiff to show that it had not been repealed. The presumption, in the absence of evidence, was that it was still in force.

ID.—EVIDENCE OF MENTAL CONDITION OF PLAINTIFF—CONCLUSION OF WITNESS.—Where an eye-witness to the accident had testified to the falling of the elevator and to the efforts of the plaintiff to hold on to the grill work of the cage, and was then asked whether the plaintiff was holding on like a man who was hurt, or a man who was in the possession of his faculties, it was not error to strike out the answer, "Well, I should say he was in possession of his faculties." Such answer was a mere conclusion of the witness upon a matter concerning which he was in no better condition to judge than any other person.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. W. P. James, Judge.

The facts are stated in the opinion of the court.

Hunsaker & Britt, for Appellant.

Wellborn & Wellborn, for Respondent.

ANGELLOTTI, J.—This is an appeal by defendant from a judgment and order denying a new trial in an action brought by plaintiff, an employee of defendant, to recover damages on account of personal injuries sustained in the falling of an elevator in defendant's building, alleged to have been due to the negligence of defendant. The action was tried by the court, without a jury, and the principal claim of defendant on this appeal is that the evidence is insufficient to sustain the findings in several respects.

The allegation of negligence in the complaint as amended was as follows: "That on said 26th day of October 1906 . . . as plaintiff entered said elevator . . . , said defendant negligently allowed and caused said elevator suddenly and unexpectedly to be abruptly and improperly started in such a manner as to, and defendant did thereby, precipitate plaintiff

against the wall of the shaft in which said elevator ascended
and descended, and crushed said plaintiff between said elevator
car and wall, . . . That plaintiff is informed and believes,
and therefore alleges, that said negligence consisted in hiring,
and causing and permitting to operate said elevator, an inex-
pert, inexperienced, and unsafe operator or elevator boy, who
left his station in said car and directed and permitted plaintiff
to enter the same when it was not, by reason of the condition
of the machinery operating it, and of the starting mechanism
of it, and the condition the same was left in by said operator,
safe so to do; all of which caused said car to start as alleged."
The trial court found in accord with this allegation, and that
defendant was guilty of negligence in hiring and permitting
to operate said elevator, such inexpert, inexperienced, and
unsafe fellow-servant, and also that the negligence of defend-
ant was the cause of the injury to plaintiff. These findings
are attacked as wanting sufficient support in the evidence.

Plaintiff was a janitor in defendant's employ, in its building
on the corner of Second and Spring streets in Los Angeles.
It was one of his duties early each morning to take down to
the lower floor a large can in which had been placed the waste
paper and refuse collected from the various offices and halls
in his charge, and empty the same into a large box kept for
that purpose. For this purpose, he was authorized to use the
two elevators maintained and operated by defendant in said
building for the accommodation of its tenants. He was en-
gaged in the performance of this duty at the time of the
accident. The evidence shows that he approached the elevator
shaft on the second floor with his garbage can, as one of de-
fendant's two elevators came down the shaft and stopped at
the second floor. The operator, a young man named Eagle,
who had been in the employ of defendant only a few days,
opened the door and stepped out into the hallway to leave
a paper at an office door some fifty feet away. It appears
to have been his custom to deliver papers at various offices.
He told plaintiff that he would take him down as soon as he
delivered this paper, and as he stepped out of the elevator,
plaintiff stepped into it with his can. For some reason the
elevator suddenly started down, going to the bottom, and in
some way plaintiff was severely injured during the progress
downward, among other things his lower jaw being fractured

in two places. The evidence clearly showed that there was no defect of any kind in the machinery itself. The elevator was operated by means of a lever in the car, thrown in one direction along a quadrant to move the car up, and in the other direction to move it down. When the lever was at the point midway between the two ends of the quadrant, in other words, on the center, the car would not move in either direction. When squarely on the center, a sort of locking device held the lever so it could be moved in neither direction without releasing or lifting a latch located at the handle of the lever. The evidence was of such a nature as to warrant a conclusion that Eagle, when he stopped the car at the second floor on the occasion in question, and left it for the purpose of delivering the paper, did not leave the lever squarely on the center and locked, but negligently left it to one side in such a position that when the plaintiff stepped into the car with his garbage can, the weight thus suddenly imposed and the probable jarring or shaking resulting therefrom, caused the lever to slip along the quadrant and put the car into motion. The machinery being in perfect condition, there is no other theory accounting for the starting of the car, except the theory suggested that plaintiff himself moved the lever by striking it with his can or pressing against it in some way. It seems unlikely that this could have happened if the lever had been squarely on the center, and plaintiff testified that the car commenced to move the moment he put his can on the floor thereof. We are satisfied that the trial court was warranted in concluding that the starting of the car was due to the failure of Eagle to leave the operating lever in a secure position.

There was an ordinance of the city of Los Angeles enacted in April, 1905, providing for the examination and licensing of operators of passenger elevators. It made provision for examination by competent officers of all persons desiring to operate any such elevator, as to age, knowledge of mechanical construction, and principal parts of passenger elevators, their practical experience in operating the same, and their ability and competency to properly operate them. It provided for the issuance of a license to such as were found competent, and made it unlawful for any one to operate any such elevator unless licensed to do so. It further made it unlawful for the owner in charge and control of any building to employ or

permit any person to operate a passenger elevator therein who was not duly licensed to do so under the provisions of the ordinance. This ordinance was introduced in evidence by plaintiff, and it was further shown that Eagle had never been licensed to operate an elevator, and that defendant, through the superintendent of its building, had hired him without making any inquiry in regard thereto. This, according to the record, constituted the only substantial evidence tending to show incompetency on the part of Eagle, except in so far as such incompetency may have been shown by the circumstances of the accident, or negligence on the part of defendant in hiring him.

There can be no doubt under the decisions in this state and in most of the other states where the question has arisen, that the failure of the defendant to comply with the provisions of the ordinance by hiring and permitting to operate an elevator one who was not licensed, was negligence *per se*. The general rule, which is the one adopted in California, is thus stated in 1 Shearman & Redfield on Negligence, sec. 13: "The violation of any statutory or valid municipal regulation, established for the benefit of private persons, is of itself sufficient to prove such a breach of duty as will sustain a private action for negligence brought by a person belonging to the protected class if the other elements of actionable negligence concur." It is further said in the same section that it is the opinion of the writers that the true rule is that the violation of such a statute or ordinance is presumptive evidence of negligence, which, if not excused by other evidence, including all the surrounding circumstances, should be deemed conclusive, and as an example of what is meant by the expression as to excusing evidence it is said that, under special circumstances, a jury might excuse an omission to give signals required by a statute, as prudent under those circumstances. No attempt was made in this case to show anything in the way of excuse for failure to comply with the ordinance, and we need not consider that branch of the rule. As said above, the quotation from Shearman & Redfield states the rule adopted in this state. (See *Siemers* v. *Eisen,* 54 Cal. 418; *Driscoll* v. *The Market Street etc. Ry. Co.,* 97 Cal. 553, 565, [33 Am. St. Rep. 203, 32 Pac. 591]; *McKune* v. *Santa Clara etc. Co.,* 110 Cal. 480, 485, [42 Pac. 980].)

Both the allegations of the complaint and the findings of the court imply negligence on the part of defendant in the operation of the elevator by Eagle, as well as negligence in the hiring and selection of Eagle as such operator. As we have seen, the evidence was sufficient to warrant the conclusion that the starting of the elevator at the time of the accident was caused by the negligence of Eagle in the operation thereof. Such negligence on Eagle's part, would ordinarily, as to third persons injured thereby, constitute negligence on the part of his employer, the defendant. It is assumed by plaintiff's counsel, however, in response to defendant's claim to that effect, that plaintiff and Eagle were fellow-servants, "employed by the same employer in the same general business," and defendant therefore claims that it cannot be held responsible to plaintiff for the negligence of Eagle. We will assume for the purpose of this case that Cragg and Eagle were fellow-servants, employed by the same employer in the same general business. Our statutory provision on this subject, section 1970 of the Civil Code, was, at the time of this accident as follows: "An employer is not bound to indemnify his employee for losses suffered by the latter . . . in consequence of the negligence of another person employed by the same employer in the same general business, unless the negligence causing the injury was committed in the performance of a duty the employer owes by law to the employee, *or unless the employer has neglected to use ordinary care in the selection of the culpable employee.*" (The italics are ours.) Under this statutory provision, an employer is liable to an employee for injuries resulting from the mere negligence of a fellow-servant, where he has failed to use ordinary care in the selection of such fellow-servant. The ordinance and its violation in the selection of Eagle constituted, upon the record before us, conclusive proof of negligence on the part of defendant in the selection of the culpable fellow-servant, rendering the defendant liable to any other employee for damages caused by his negligence—in other words, making the negligence of such culpable servant its own negligence as to other employees, as well as to other persons.

The suggestion that the selection of Eagle was made by a fellow-servant of plaintiff, in that Eagle was directly selected and employed by the manager of the building, who had full

charge thereof for defendant, and hired all the help therein,
is without force. It is too well settled to admit of discussion
that such duties of an employer as are considered personal
to him, among which is the duty to use ordinary care in the
selection of fellow-servants, cannot be delegated to another
servant, and that when such duties are confided to another
employee, such employee, in the performance of those duties,
is the representative of the employer and not a fellow-servant.
(See *Skelton* v. *Pacific Lumber Co.*, 140 Cal. 507, 511, [74
Pac. 13], and cases there cited.)

We think that there was sufficient evidence to warrant the
trial court in finding that the injuries to plaintiff were caused
by the sudden starting and progress downward of the elevator
under the circumstances shown and that plaintiff was not
guilty of any negligence contributing thereto.

It is claimed that the court committed several errors on
the trial.

The ordinance hereinbefore referred to was not alleged
in the complaint, plaintiff simply alleging negligence in the
manner we have specified. It is urged that it was necessary
to plead the ordinance in order to make it available as evi-
dence, and that the trial court therefore erred in admitting
it over the objections of defendant. The precise question
thus presented appears never to have been decided by this
court, but it appears to us that, upon elementary principles,
it was admissible without having been pleaded. The cause
of action here alleged was not a violation of the ordinance,
but the negligence of the defendant, and the ordinance was
simply evidence offered to show such negligence. Under our
system of pleading, it is both unnecessary and improper to
plead the evidence relied on to establish the ultimate facts
essential to a cause of action. In *Brasington* v. *South Bound
R. R. Co.*, 62 S. C. 325, [89 Am. St. Rep. 905, 40 S. E. 665],
an action for damages for injuries for falling into an exca-
vation left unguarded in violation of the provisions of an
ordinance where the complaint simply alleged negligence in
leaving the excavation unguarded and did not properly allege
the existence of any ordinance, it was held that the ordinance
was admissible to show the alleged negligence, the court quoting
approvingly from an earlier case as follows: "This is not an
action to enforce the performance of any duty imposed by

an ordinance of the city of Charleston, or to enforce the payment of any tax or penalty imposed by such ordinance, but the cause of action here is the negligence of the defendant company resulting in the death of the intestate, and the ordinances of the city are only referred to as showing such negligence." In *Bragg* v. *Metropolitan St. Ry. Co.*, 192 Mo. 331, 350, [91 S. W. 527, 532], where a similar question was presented, it was said: "Should it (the ordinance) be excluded because not pleaded? We think not. Where a suit is based on an ordinance it should be pleaded . . . but where the ordinance is merely sought to be introduced as an evidential fact, it would seem, on principle, that it need not be pleaded. And this is so, because it is necessary to plead only the ultimate and substantial facts necessary to constitute the cause of action." (See, also, *Riley* v. *Wabash etc. Ry. Co.*, 18 Mo. App. 385.) These cases appear to us to state the true rule. Some of the cases cited by counsel for defendant were cases where it was not attempted to allege any negligence other than the violation of an ordinance, and the ordinance was not well pleaded. If the allegation as to the ordinance was stricken out, nothing remained to show negligence. Of these, *Lake Erie & W. R. Co.* v. *Mikesell*, 23 Ind. App. 395, [55 N. E. 488], is an example. In such cases it is held that the ordinance must be properly pleaded, and that the complaint should also aver that the ordinance was in force at the time of the occurrence of the act complained of. Such ruling does not appear to us to be inconsistent with our conclusion. Treating the ordinance simply as evidence of the obligation resting on defendant in the matter of the selection of employees, it was not necessary for plaintiff to show that it had not been repealed. The presumption, in the absence of evidence, was that it was still in force. What we have said upon this point is also a sufficient answer to the claim that the testimony showing that Eagle had never been licensed should not have been admitted. There would be much force in some of the claims of learned counsel for defendant in relation to the effect of this ordinance if the allegations of the complaint and the findings did not sufficiently show any negligence other than the selection of an incompetent elevator operator, but, as we have said, they do sufficiently show negligence in the operation of the elevator by the operator, for which negli-

gence defendant, by reason of its failure to use ordinary care in the selection of such operator, is responsible to any other employee injured thereby without fault on his own part.

There was no prejudicial error in striking out the concluding portion of an answer given by witness Macomber to a question asked him on cross-examination by defendant's counsel. The portion stricken out was in no way responsive to the question, and the portion allowed to remain constituted a complete answer.

There was no error in striking out an answer given by witness Collon to the somewhat vague question "What was Cragg doing holding on to the grill work? Was he holding on like a man who was hurt, or a man who was in the possession of his faculties?" Collon was in the lobby on the lower floor, adjacent to the elevator shaft, and had testified that he saw the elevator coming down, and the plaintiff, therein, endeavoring to hold on to the grill work of the elevator, with his feet above the bottom of the car, until, as the elevator nearly reached the bottom, he fell to the floor of the cage. He answered the above question: "Well, I should say he was in possession of his faculties." We think it manifest that this was a mere conclusion of the witness upon a matter concerning which, under the circumstances, he was in no better condition to judge than would be any other person to whom the acts of plaintiff, as detailed by Collon, might be related, and that the rule of *People* v. *Manoogian,* 141 Cal. 592, [75 Pac. 177], and other like cases has no application.

The judgment and order denying a new trial are affirmed.

Shaw, J., and Sloss, J. concurred.