[No. 23348. Department Two. January 4, 1932.]

CARLTON C. COMFORT et al., *Appellants*, v. E. E. PENNER et al., *Respondents*.[1]

[1]Reported in 6 P. (2d) 604.

_Carkeek, McDonald & Harris_ and _Charles L. Harris,_ for appellants.

_Shank, Belt, Fairbrook & Rode,_ for respondents.

HOLCOMB, J.—Appellants, as a marital community, sued respondents, as a marital community, to recover $7,565 damages for personal injuries.

Appellants alleged damages sustained by personal injuries to the wife, a guest rider, by reason of an automobile accident which occurred on April 11, 1930, shortly after midnight, at the intersection of California avenue and Admiral way, in Seattle. Appellants alleged violations on the part of respondent husband of both state and city traffic regulations, particularly alleging violations of the city traffic ordinance No. 53223, § 16 of which makes it unlawful to drive or operate a motor vehicle without having suitable bell, horn, or other signalling device, which shall be used as a warning signal whenever there is danger of a collision or accident; § 91, making it unlawful for any person to drive a vehicle in a reckless manner over and along the public streets of the city in such manner as to endanger or inconvenience unnecessarily other users of its streets; § 92, prohibiting driving or operating a vehicle within the corporate limits at a rate of speed faster than twenty-five miles per hour, or to drive or operate such vehicle over or across any street intersection within the corporate limits at a rate of speed faster than fifteen miles per hour, or in any case at a rate of speed that will endanger the property of another or the life or limb of any person, except on arterial highways when properly signed according to the state vehicle code; and § 110, requiring drivers when

approaching street intersections to look out for and give right of way to vehicles on their right, simultaneously approaching a given point within the intersection, and whether such vehicle first enters and reaches the intersection or not; provided, that this paragraph shall not apply to drivers on arterial highways.

It is alleged that neither of the highways in question was at the time an arterial highway of the city or state.

Respondents by answer denied the allegations of negligence, and as an affirmative defense alleged that whatever injuries or damages were caused appellant wife were caused solely and entirely by the negligence of one Fraker, the driver of the car in which she was injured. This affirmative answer was denied by reply.

We shall henceforth mention each of the parties in the singular number.

After having heard the evidence of appellant and three other occupants of the car in which she was riding as a guest, including that of Fraker, the driver and owner, and the testimony of respondent, the jury found in favor of respondent, upon which the court entered its judgment of dismissal. The jury having accepted the evidence of respondent and rejected that of appellant and her witnesses, we are bound to accept that evidence which is most favorable to respondent as governing this case.

According to the testimony of respondent, he left the place where he has worked as a machinist for more than ten years, Todd Dry Docks, in Seattle, to go to his home in West Seattle at a few minutes after midnight. Todd Dry Docks is about three miles from the intersection where this collision occurred. The collision occurred, according to respondent, at about 12:25 to 12:30 a. m. Respondent had been accustomed to traveling the same route on his homeward journey,

shortly after midnight, five times a week, for about ten years.

Admiral way is, with the exception of Avalon way, the most heavily traveled street or highway in West Seattle, which is a populous district of Seattle. California avenue, while a main thorofare, is not as heavily traveled as Admiral way. There is, however, a double track street car line on California avenue. Admiral way runs east and west, and California avenue intersects it at right angles. Both streets are forty-eight feet in width between curbs and eighty feet wide between property lines. Both streets are practically level at the intersection, and the intersection is paved. Admiral way, both east and west of the intersection, has two strips of pavement each fifteen and one-half feet wide, separated by a dirt strip seventeen feet wide.

Respondent was traveling west on Admiral way, and Fraker, south on California avenue. There is a stop sign at the northwest corner of this intersection, which was erected and has been maintained since May, 1928, requiring drivers of vehicles on that side of Admiral way to stop before entering or crossing the intersection. When respondent approached the intersection from the east, he saw the Fraker car approaching it from the north at the rate of twenty or twenty-five miles an hour, and when between seventy-five and one hundred feet from the edge of the intersection, Fraker slowed his car down until, in the language of his wife, a witness, "he came so close to a stop that he could have stopped if it had been necessary."

As respondent drew near the intersection, he slowed down to fifteen miles per hour. He then looked to his right and saw the Fraker car approaching the intersection and slowing down so that it could be stopped if necessary. He then directed his attention to the left,

or southerly, on California avenue, to ascertain if any cars were coming from that direction, and then returned his glance to the north, up California avenue, when for the first time he saw Fraker was attempting to cross ahead of him, and he immediately put on his brakes, which were in good order, but it was too late to avoid the collision.

Fraker testified that he saw the car of respondent east of the intersection at such a distance that he thought he had time to cross the intersection, but that respondent was going too fast. Respondent positively stated that he did not exceed fifteen miles per hour, and would not admit that he was going even sixteen miles per hour across the intersection.

Appellant insists that respondent was negligent in seven particulars: (1) failure to sound his horn; (2) exceeding fifteen miles per hour over and across the intersection; (3) not keeping proper lookout ahead; (4) driving in a careless and imprudent manner; (5) failure to avoid the accident; (6) failure to keep his car under control; (7) failure to yield to the Fraker car the right of way to which the Fraker car, being on respondent's right, was entitled.

The failure to sound his horn by respondent could not be urged as an act of negligence in violation of the city traffic ordinance, when the driver of the car in which appellant was riding as a guest saw respondent's car approaching the intersection before it entered it. It would have availed nothing to sound the horn in so far as the guest was concerned, for she had nothing to do with the operation of the Fraker car.

The jury having credited respondent's testimony and found in his favor, disposes also of all the other claims of negligence on his part, except that of the failure to yield to the Fraker car the right of way to

which appellant claims it was entitled because of being on respondent's right.

As to the seventh claim of negligence, respondent was traveling upon a highway that was protected at that place by a stop sign. Whether he was justified in relying upon that stop sign was submitted to the jury under an instruction which appellant contends is erroneous, which reads:

"If you find that a stop sign was erected and standing at the said alleged intersection and that said E. M. Fraker, immediately preceding said collision, was aware of the presence and existence of said stop sign, or, acting as a reasonable and ordinarily prudent person under like or similar circumstances, should have been aware of the same, or should have seen said stop sign, then said Fraker would be negligent if he failed to stop at said stop sign, provided you believe that an ordinarily careful and prudent person, under like or similar circumstances, in the exercise of reasonable care, would have stopped at said stop sign.

"If you believe that an ordinarily careful and prudent person, at the time and place of said alleged collision, in the exercise of reasonable and ordinary care, would have been, under like or similar circumstances, aware of said stop sign, or would have seen said stop sign and would have stopped, then the defendant Penner had a right to expect E. M. Fraker to so stop his car and had a right to rely upon such expectation until such time as he saw, or, in the exercise of reasonable care, should have seen, that said E. M. Fraker was not going to bring his car to a stop."

As has been stated, the stop sign had been maintained at that corner of the intersection for nearly two years prior to this collision. It was a sign of warning, and one which all automobile drivers would be expected to obey, and others approaching the intersection would expect them to obey. Presumably, it was erected and maintained under proper authority, al-

though appellant contends that it was only erected and maintained by virtue of a letter to the superintendent of streets and sewers prescribing a method of establishing such stop signs, which was dated November 9, 1929, while the stop sign in question had been maintained eighteen months prior thereto.

In this connection, appellant also contends that the stop sign was erected and maintained under the provisions of ordinance No. 53223, § 61, the city traffic ordinance, which provides that the chief of police, with the approval of the board of public works, might establish danger zones, which section appellant asserts is invalid as being in violation of Rem. 1927 Sup., § 6362-5, § 6362-40 and § 6362-41, being portions of the motor vehicle code of Washington, and of Art. XI, § 11, of the constitution, providing:

"Any county, city, town or township, may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

We do not consider it necessary to determine whether or not § 61 of the traffic ordinance is contrary to the motor vehicle code or the constitutional inhibition above quoted. The stop sign had been maintained and renewed at that intersection since May, 1928. Presumably, it was erected and maintained by legally constituted authority; but whether so or not, is of no particular moment, as it was at least a *de facto* warning sign. Whether it was a *de jure* warning sign or not, is not necessary to determine. It was maintained for the safety of traffic. Travelers upon public highways are not expected to first ascertain and determine whether such signs are established in strict compliance with law, before respecting them.

In *Lawe v. Seattle,* 163 Wash. 362, 1 P. (2d) 237,

traffic on a certain street had been regulated to go one way, merely by directions spread out on the pavement in large letters "One Way Traffic" with an arrow pointing contrary to the direction in which one of the drivers was proceeding. It was there held that the plaintiff was not guilty of negligence in assuming that the driver proceeding in the direction against the traffic sign would comply with the traffic signal.

 Neither is it material that neither of these streets was an arterial street or highway. The stop signal at the corner of the intersection was the signal of a danger zone. Rem. 1927 Sup., § 6362-40, merely prescribes that traffic upon an arterial main highway, without defining it, shall have the right of way, and that operators of other vehicles upon entering an arterial main highway shall come to a full stop thereat when and where signs, posts or other markers so direct or indicate. Section 5 of ordinance No. 53223 defines a "danger zone" as including all that portion of the public street the use of which, on account of extraordinarily dangerous conditions, is regulated or prohibited; such portion to be properly marked by signs or buttons.

The safety of traffic, by the growth of unforeseen congestion in certain areas, may, and often does, demand some additional municipal regulation of traffic not found in the state statutes. The power to so regulate by local authorities is contemplated by our statutes.

So that, it is immaterial whether this Admiral way was defined as an arterial street or highway or not. It was marked as a danger zone by the stop sign.

We therefore consider that the instruction given by the trial court was a valid and very sensible instruction to give. *Clark v. Wilson*, 108 Wash. 127, 183 Pac.

103. See, also, *Lindenbaum v. Barbour*, 2 P. (2d) (Cal.) 161.

Appellant also complains of the refusal of the trial court to give a requested instruction, on the subject of right of way as to these parties, which ignored the existence of the stop sign. This, also, is governed by the reasoning in the *Clark* case, *supra*.

■ Appellant further complains because the trial court refused to give a requested instruction defining proximate cause which did not include the words "there may be more than one proximate cause to an accident." The trial court had, however, instructed that the negligence, if any, of Fraker could not be imputed to appellant; and in another that the law is that, if the concurrent negligence of two persons combined together resulted in an injury to a third person, such injured person may recover from either wrongdoer, or both; and that, if they found from the evidence that both respondent and the driver of the automobile in which appellant was riding were negligent, their verdict should be for appellant; and in still another that they could find for appellant, even though they found Fraker was guilty of negligence which was a proximate cause of the collision. These instructions we consider amply covered the request of appellant as favorably as could be desired.

■ Lastly, appellant complains because the amount of the repair bill of respondent to his automobile, which consisted of the insignificant sum of some thirteen dollars, was admitted in evidence. No recovery was sought by respondent for damages by way of repairs, or otherwise. The amount of the repair bill was introduced solely for the purpose of corroboration of his evidence that the damage to his car had been slight.

Whether it was immaterial or not in such case, we do not consider it in any wise prejudicial to appellant.

We find no error in the record, and the judgment is affirmed.

TOLMAN, C. J., BEALS, MILLARD, and MAIN, JJ., concur.

