[No. 25371. *En Banc.* August 15, 1935.]

RUTH A. FOTHERGILL, *Respondent*, v. ARVO KAIJA et al., *Appellants.*[1]

[1]Reported in 48 P. (2d) 643.

MILLARD, C. J., STEINERT, BLAKE, and BEALS, JJ., dissent.

*Thos. L. O'Leary,* for appellants.
*Yantis & Brodie,* for respondent.

HOLCOMB, J.—Respondent instituted this action as executrix on behalf of herself and her four minor children to recover damages growing out of the death of Harold R. Fothergill at about noon on October 19, 1933, as the result of an automobile collision. Respondent is the widow of decedent. In her complaint, she asked for fifty thousand dollars damages on account of the death of her husband; in a second cause of action, claimed $381.99 special damages incident to his injuries and death; and a third cause of action claimed $130 as damages to the automobile driven by decedent.

The case was tried to the court and a jury. The jury rendered a verdict for damages in favor of re-

spondent in the sum of $20,481.91, upon which judgment was entered.

At appropriate times, appellants challenged the sufficiency of the evidence to sustain any recovery in favor of respondent and moved for a judgment notwithstanding the verdict, or in the alternative, for a new trial. These challenges and motions were denied.

Twenty-two errors are assigned by appellants as grounds for reversal of the judgment.

The chief charge of negligence set forth in the complaint of respondent is as follows:

"That there is a stop sign on the gravel road located on the right side thereof as one approaches the pavement placed in proper position to warn persons operating cars thereover and requiring persons operating cars to stop; that the said Arvo Kaija operating the said car as aforesaid, failed and neglected to stop his car and without regard to the rules of the road, to the requirements of the stop sign or to reasonable care, ran his car into and upon the car driven by the said Harold Raymond Fothergill."

Respondent further pleaded general allegations that Kaija drove without regard to the rules of the road and without regard to reasonable care; that he failed to observe the first law of reasonable care, in that he did not watch the traffic approaching a point common to two roadways which he was about to cross.

These are salient facts and circumstances presented for the consideration of the court and jury: The collision occurred at the junction of the Pacific highway, where it makes a right-angle turn at what is called the Log Cabin at the outside edge of Olympia. Another road, called the Olympia-Yelm highway, also a paved arterial highway, leaves the Pacific highway at that right-angle curve and proceeds southerly. Entering the Yelm road from the east is a county graveled road referred to in this case as the Log

Cabin road. It was on this graveled road that Fothergill lived, some three or four blocks from the intersection in question, and at the time of the accident was proceeding from Tumwater, adjoining Olympia, to his place of residence east of the intersection in question. The Pacific highway is paved in each direction from the Log Cabin curve, twenty feet in width, and the curve itself is paved on the inside of the curve to a much greater width.

The entire width of the graveled Log Cabin road is a few feet south of what would be the south line of the Pacific highway projected east beyond the curve, so that one traveling on the Pacific highway from Tumwater toward Olympia arriving at the turn and desiring to go down the Log Cabin road will be compelled to angle slightly to the right. Seventy-five feet south of the intersection of the Log Cabin road with the Pacific highway on the Yelm road is a stop sign erected by the authorities. The pavement from the direction of Tumwater is somewhat upgrade, but the intersection and the Yelm and Log Cabin roads are entirely level for some distance from the intersection.

At the time in question, Fothergill, who was familiar with the intersection and that the stop sign was located seventy-five feet from the west margin of the Log Cabin road, traveling from the direction of Tumwater toward his home to the east of the intersection at the rate of not to exceed eighteen or twenty miles per hour, on a protected highway, on the right-hand side of the Pacific highway, reached the curve, turned slightly diagonally to his right, intending to drive over the north part of the Log Cabin road and to proceed easterly on that road. He had apparently driven his car entirely across a planked area, which was there at that time in an old street railway track,

and had also cleared the paved portion of the Yelm road, when he was struck by the car driven by appellant Kaija driving on the Yelm road toward Olympia.

Kaija had a passenger with him in his car. His car collided with the Fothergill car at a point where the right supporting arm of the bumper struck the right rear wheel of the Fothergill car squarely on the hubcap. The violence of the impact drove the Fothergill car several feet and over against a sixteen inch power pole, located northeast of the intersection, and "sideswiped" the pole. The Fothergill car then drifted a short distance and drew up against or close to a power pole located on the opposite side of the Log Cabin road. Fothergill sustained a fractured skull, from which he died some hours later.

Kaija testified that, at the time of the impact, he was driving at the rate of ten miles an hour on his own extreme righthand side of the Yelm paved roadway, and that his speed was so slow that he could have stopped within ten feet. He admitted that he could see for at least one hundred feet to his left down the Pacific highway, but that he never saw the Fothergill car until almost at the moment of the collision, when the Fothergill car was actually on the planking between the street car rails. He further admitted that, if he had looked to the left, from the direction in which the Fothergill car was approaching, he could have seen it at least one hundred feet distant. He testified that he intended to stop his car at the intersection of the Yelm road and the Pacific highway pavement, but he never testified that he did stop. The best evidence that he did not intend to stop was the fact that he did not stop.

In one group of assignments of error appellants urged the court's overruling of their demurrer to the complaint; the denial of the challenge to the sufficiency

of the evidence; the denial of their motion for a directed verdict at the conclusion of the trial; the denial of the motion for judgment n. o. v.; and the entry of any judgment in favor of respondent.

Under this group of assignments, appellants forcefully argue that Rem. Rev. Stat., §§ 6362-41a and 6362-41b [P. C. §§ 196-58 and 196-59], apply.

"The boards of county commissioners of the respective counties shall determine the particular county or township roads of their counties upon which stops shall be made in accordance with the provisions of this act; and upon such determination the said boards shall cause to be posted and maintained on such intersecting county or township road, at a point actually or approximately three hundred feet distant from such heavily traveled state highway or county road, a printed or painted notice, which shall be plainly visible from such intersecting road, to the effect that such heavily traveled state highway or county road is three hundred feet distant; and shall also cause to be posted and maintained on said intersecting county or township road at the point of intersection, a sign, plainly visible from said intersecting county or township road, upon which shall be printed or painted the word 'Stop.' All such signs shall be uniform as adopted by the state highway department." Rem. Rev. Stat., § 6362-41a [P. C. § 196-58].

The second of the cited sections prescribes:

"Any person driving or operating any vehicle upon any county or township road upon which has been posted the 'Stop' notice herein provided for, who shall fail to bring the vehicle so driven or operated to a complete stop at the point where such county or township road intersects such heavily traveled state highway or county road, shall be guilty of a misdemeanor." Rem. Rev. Stat., § 6362-41b [P. C. § 196-59].

It is obvious, to begin with, that, from the complex intersection here involved, the stop sign seventy-five feet from the Log Cabin road southerly on the Yelm

highway was at the most suitable and feasible point. Kaija testified that he was familiar with the highway and that intersection. It is presumably a matter of discretion where such stop sign will be most effective in the judgment of the authorities; but at least, it was a sign which all automobile drivers would be expected to obey and others approaching the intersection would expect them to obey. *Comfort v. Penner,* 166 Wash. 177, 6 P. (2d) 604; *Mathias v. Eichelberger,* 182 Wash. 185, 45 P. (2d) 619; *Anderson v. Wheeler,* 182 Wash. 249, 46 P. (2d) 726.

Fothergill lost his life in the collision and could not testify as to what he did, or did not do, to protect himself. The presumption is that he did all that the situation then and there presented to him required him to do to save himself from injury. *Eaton v. Hewitt,* 171 Wash. 260, 17 P. (2d) 906; *Smith v. Seattle,* 172 Wash. 66, 19 P. (2d) 652.

It would seem plain that Kaija was guilty of very positive negligence by his inattention and indifference to the traffic approaching on the proper side of the Pacific highway from his left, toward the intersection in question. Whether the stop sign was three hundred feet distant from the intersection, or less, he failed to heed its warning. He said he intended to stop at the intersection, but he did not stop, but drove on until his car collided with the rear end of that of Fothergill. He could have avoided it by swerving but slightly to his left. It would seem that there was very little excuse for such negligence, and it cannot be argued that he was not guilty of very culpable negligence in so proceeding.

The case of *Carrigan v. Ashwell,* 147 Wash. 597, 266 Pac. 686, 58 A. L. R. 1194, relied upon by appellants, is utterly different in the facts and circumstances from this case. But the case of *Day v. Polley,*

147 Wash. 419, 266 Pac. 169, is very much in point with this case. The evidence there showed that the car of respondent entered the intersection first and was crossing the same when the other car struck it. We held in that case that the questions of negligence and contributory negligence were questions of fact and were properly submitted to the jury.

So in this case, the fact of negligence of Kaija was a question of fact to be submitted to the jury and was properly submitted under our decisions, by instructions given by the trial court.

As to the question of contributory negligence on the part of decedent, the facts in *Rosenstrom v. North Bend Stage Line*, 154 Wash. 57, 280 Pac. 932, were also clearly at variance with the facts here as to the negligence of the injured person. We there held that the driver of an automobile entering an arterial street at an intersection without stopping, as required by Rem. Rev. Stat., § 6362-40 [P. C. § 196-40], is guilty of contributory negligence, as a matter of law, in colliding with a stage in plain view without seeing it in time to stop before crashing into its side when it was more than half way across the intersection. This last authority is more favorable to respondent than to appellant. See, also, *Gaskill v. Amadon*, 179 Wash. 375, 38 P. (2d) 229.

Upon the facts and circumstances shown in this case, it cannot be held, as a matter of law, that decedent was guilty of contributory negligence in any way causing his injury.

The facts in this case bring it within the rules announced in *Noot v. Hunter*, 109 Wash. 343, 186 Pac. 851; *Breithaupt v. Martin*, 153 Wash. 192, 279 Pac. 568; *Martin v. Hadenfeldt*, 157 Wash. 563, 289 Pac. 533; *Church v. Shaffer*, 162 Wash. 126, 297 Pac. 1097; *Martin v. Westinghouse Electric & Manufacturing*

*Co.,* 162 Wash. 150, 297 Pac. 1098; *Pomikala v. Cartwright,* 170 Wash. 192, 16 P. (2d) 204; *Hamilton v. Lesley,* 174 Wash. 516, 25 P. (2d) 102; *Smith v. Seattle, supra;* and *Eaton v. Hewitt, supra,* and cases therein cited.

Another error claimed is in admitting testimony showing the earnings of decedent from the spring of 1929 to the time of his death. That was a matter within the discretion of the trial court and under the circumstances existing since 1929, we consider very appropriate, inasmuch as the testimony showed the earning capacity of decedent, both during normal times and during subnormal times.

At the time of his death he was thirty-four years and three months of age and had an expectancy of 31.58 years. His wages had varied from $20 to $76 per week, but were generally more than fifty dollars per week. The award of twenty thousand dollars on the first cause of action was well within the testimony and will not be disturbed.

Other errors are claimed in admitting testimony and in giving and refusing instructions, which have been examined and found to be without merit.

On the whole record, we consider that appellants had a fair trial. There was no error justifying reversal, and the judgment should be, and is, affirmed.

TOLMAN, MAIN, MITCHELL, and GERAGHTY, JJ., concur.

STEINERT, J. (dissenting)—I am unable to agree with the majority. The theory of the respondent, as shown by her complaint, was that the appellant was guilty of negligence, *as a matter of law,* because he did not stop *at* the sign board seventy-five feet away from the Pacific highway. Her evidence was based upon that assumption and the court adopted that

theory in its instructions to the jury. All of this, in my opinion, proceeded upon an incorrect view of the law.

The majority opinion quotes Rem. Rev. Stat., §§ 6362-41a and 6362-41b [P. C. §§ 196-58 and 196-59], and I assume that those sections are recognized as being the law. Section 6362-41a requires the board of county commissioners to erect proper signs on county or township roads at points actually or approximately *three hundred feet* distant from heavily traveled state highways, such as the Pacific highway, and also *at* points of intersection. It is conceded that in this case no such sign was erected at either place. The neglect, however, in this instance, is not charged to the county but to the appellant. Section 6362-41b requires the traveler upon the road on which a stop notice is posted to come to a complete stop *at the point where the two roads intersect.* It does not require him to come to a complete stop *seventy-five feet away* from the intersection, at a point where an unauthorized sign post is erected.

The majority opinion naively says with reference to the appellant:

"He testified that he intended to stop his car at the intersection of the Yelm road and the Pacific highway pavement, but he never testified that he did stop. *The best evidence that he did not intend to stop was the fact that he did not stop.*" (Italics supplied.)

I confess that I do not comprehend the logic of this statement. If a man intends to go to a certain place and is killed before he gets there, is the fact that he never arrived at his destination the *best evidence* that he never intended to go there at all? The evidence in this case, from respondent's own witness, the only eye-witness to the accident, was that appellant was slowing down at the time of the occurrence. That of

itself should be a sufficient answer to the quoted statement in the majority opinion. But the conclusive answer, it seems to me, is that appellant was not *required* to stop until he reached the intersection. The statute so provides.

Appellant requested the court to instruct the jury upon the law as set forth in §§ 6362-41a and 6362-41b, the requested instruction following almost verbatim the language of those sections. The court declined to do so. To the contrary, the court gave repeated instructions to the effect that it was the duty of the appellant to stop at the particular stop sign, and that failure to stop at that point was negligence.

The vice of the situation is manifest. The jury was told that it was the positive duty of the appellant to come to a complete stop seventy-five feet away from the intersection, and that failure to do so was negligence, as a matter of law. In other words, the jury was permitted to find appellant guilty of negligence, as it did, upon an incorrect statement and theory of the law. The jury having been misguided upon a vital issue in the case, its verdict should not be allowed to stand.

The motion for new trial should have been granted.

BLAKE and BEALS, JJ., concur with STEINERT, J.

MILLARD, C. J. (dissenting)—I am of the opinion that the decedent was guilty of such contributory negligence as bars recovery. The action should be dismissed.

### ON REHEARING.

[*En Banc.* February 1, 1936.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the opinion heretofore filed herein.