[L. A. No. 18480. In Bank. Apr. 29, 1943.]

LOIS A. CLINKSCALES et al., Respondents, v. HERMAN ROLAND CARVER, Appellant.

Hickcox & Provence and Ross T. Hickcox for Appellant.

Syril S. Tipton and John J. Ford for Respondents.

TRAYNOR, J.—This action was brought to recover damages for a death caused by an automobile collision that occurred May 20, 1937, at the intersection of Highline Road and Oat Canal Road in Imperial County. The defendant was driving north on Highline Road as Richard Clinkscales, the husband of one plaintiff and father of the other, was proceeding west on Oat Canal Road. There was a stop-sign at the intersection on Highline Road, placed there in 1936 by a road foreman, with the permission of the supervisor of that district, to give gravel trucks the right of way on Oat Canal Road. Although the defendant was familiar with this sign he did not stop his car before entering the intersection. He looked in both directions but did not see the other car coming. The resulting collision caused the death of Richard Clinkscales. Defendant appeals from a judgment entered on a verdict of the jury in favor of plaintiffs.

The defendant contends that the stop-sign was placed on Highline Road at this intersection illegally and that the trial court's instructions on that question were prejudicially erroneous. The court instructed the jury that any person operating a motor vehicle in a northerly direction on High-

line Road at the intersection with Oat Canal Road was required to stop before entering it, by virtue of a resolution of the Board of Supervisors of Imperial County adopted on January 4, 1927, and section 577 of the Vehicle Code; that the right of way was controlled by section 552 of the Vehicle Code; and that if defendant failed to make the stop and this failure proximately caused the accident the verdict should be in favor of the plaintiffs.

At the time of the accident section 577 of the Vehicle Code provided: "Vehicles Must Stop at Through Highways. The driver of any vehicle upon approaching any entrance of a highway or intersection signposted with a stop-sign as provided in this code shall stop at such sign before entering or crossing such highway or intersection." Section 552 of the Vehicle Code provided: "Vehicle Entering Through Highway. The driver of any vehicle which has stopped as required by this code at the entrance to a through highway shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicle so about to enter or cross the through highway."

The resolution of January 4, 1927, provided: "It is hereby resolved, found and ordered that the general safety of the public and the proper and reasonable regulation and control of traffic on the public roads and highways in this county and outside of incorporated cities and towns require the establishment of 'Boulevard stops' at all roads intersecting all county and state highways in Imperial County outside of incorporated cities and towns, and such 'Boulevard stops' are hereby established at said intersections as provided and authorized by Ordinance No. 82 of this County."

Ordinance 82, referred to in the resolution had been passed by the board on July 10, 1926, but never became effective because of admitted defects in publication. Defendant contends that since the resolution orders the establishment of boulevard stops "as provided and authorized by Ordinance No. 82," which was not legally adopted, there was no legal authorization for the stop sign, and that the instructions were therefore prejudicially erroneous.

This contention would make the question of negligence

*per se* turn upon the irregularity of the authorization. Whatever the effect of the irregularity on defendant's criminal liability, it cannot be assumed that the conditions that limit it also limit civil liability. The propriety of taking from the jury the determination of negligence does not turn on defendant's criminal liability. ▮ A statute that provides for a criminal proceeding only does not create a civil liability; if there is no provision for a remedy by civil action to persons injured by a breach of the statute it is because the Legislature did not contemplate one. A suit for damages is based on the theory that the conduct inflicting the injuries is a common-law tort, in this case the failure to exercise the care of a reasonable man at a boulevard stop. ▮ The significance of the statute in a civil suit for negligence lies in its formulation of a standard of conduct that the court adopts in the determination of such liability. (See Holmes, The Common Law, 120-129; Morris, *The Relation of Criminal Statutes to Tort Liability,* 46 Harv. L. Rev. 453.) The decision as to what the civil standard should be still rests with the court, and the standard formulated by a legislative body in a police regulation or criminal statute becomes the standard to determine civil liability only because the court accepts it. In the absence of such a standard the case goes to the jury, which must determine whether the defendant has acted as a reasonably prudent man would act in similar circumstances. The jury then has the burden of deciding not only what the facts are but what the unformulated standard is of reasonable conduct. ▮ When a legislative body has generalized a standard from the experience of the community and prohibits conduct that is likely to cause harm, the court accepts the formulated standards and applies them (*Siemers* v. *Eisen,* 54 Cal. 418; *Cragg* v. *Los Angeles Trust Co.,* 154 Cal. 663 [98 P. 1063 16 Ann.Cas. 1061]; see cases cited in 19 Cal.Jur. 632 et seq., *Osborne* v. *McMasters,* 40 Minn. 103 [41 N.W. 543, 12 Am.St.Rep. 698]; see Restatement: Torts, sec. 286), except where they would serve to impose liability without fault. (*Berkovitz* v. *American River Gravel Co.,* 191 Cal. 195 [215 P. 675]; *Burlie* v. *Stephens,* 113 Wash. 182 [193 P. 684]; *Tedla* v. *Ellman,* 280 N.Y. 124 [19 N.E.2d 987]; see 13 Cal.L.Rev. 428; 37 Mich.L.Rev. 811.)

Even if the conduct cannot be punished criminally because of irregularities in the adoption of the prohibitory provisions, the legislative standard may nevertheless apply if it is an appropriate measure for the defendant's conduct.

When the court accepts the standard it rules in effect that defendant's conduct falls below that of a reasonable man as the court conceives it. It does no more than it does in any ruling that certain acts or omissions amount as a matter of law to negligence. (Restatement: Torts, sec. 285.) An appellate court is concerned with determining whether the trial court arrived at a proper standard in a particular case. In this case the trial court rightly instructed the jury that measured by the standard set up by the resolution of the board of supervisors and the Vehicle Code it was negligence as a matter of law to disregard the stop-sign. Failure to observe a stop-sign is unreasonably dangerous conduct whether or not the driver is immune from criminal prosecution because of some irregularity in the erection of the stop-sign. If a through artery has been posted with stop-signs by the public authorities in the customary way and to all appearances by regular procedure, any reasonable man should know that the public naturally relies upon their observance. If a driver from a side street enters the ostensibly protected boulevard without stopping, in disregard of the posted safeguards, contrary to what drivers thereon could reasonably have expected him to do, he is guilty of negligence regardless of any irregularity attending the authorization of the signs. (*Comfort* v. *Penner,* 166 Wash. 177 [6 P.2d 604]; *Mayfield* v. *Crowdus,* 38 N.M. 471 [35 P.2d 291]; *Fothergill* v. *Kaija,* 183 Wash. 112 [48 P.2d 643, 53 P.2d 1198]; *Flood* v. *Miura,* 120 Cal.App. 467 [8 P.2d 552].) Such irregularity does not relieve a person from the duty to exercise the care of a reasonable man under such circumstances. Otherwise a stop-sign would become a trap for innocent persons who rely upon it.

The judgment is affirmed.

Gibson, C. J., Curtis, J., Carter, J., and Peters, J. pro tem., concurred.

SHENK, J.—I dissent.—The trial court instructed the jury that the defendant was guilty of negligence as a matter of law if he failed to stop on Highline Road at its intersection with Oat Canal Road. The basis for the instruction was the false assumption that Highline Road was signposted with a stop-sign as then provided by section 577 of the Vehicle Code. There was no stop-sign so posted. Some stop signal was installed at the intersection but without any legal authorization therefor. The question of the defendant's negligence under

the circumstances was, in my opinion, a question of fact for the jury. The cases cited in the majority opinion go no further than to hold that the jury may consider the existence of a so-called de facto stop-sign in determining the question of the defendant's negligence. The withdrawal of that issue from the jury in the present case was manifestly prejudicial. At the time of the impact the Clinkscales car was traveling on the left or wrong side of the road and, from the evidence of the physical facts, must have been going at an excessive rate of speed. Freed from the erroneous instruction the jury might well have found that the negligence of the deceased was the sole proximate cause of the collision.

Edmonds, J., concurred.