[No. 740-1.    Division One—Panel 1.    December 13, 1971.]

RALPH BOWEN, *as Guardian, Appellant,* v. EMELIA BAUM-
GARDNER, *Defendant,* JOE DOE HOBART *et al., Respondents.*

*Clodfelter, Lindell & Carr* and *Jerome R. Cronk,* for appellant.

*Miracle & Pruzan,* for respondents.

HOROWITZ, C.J.—The minor plaintiff appeals from the summary judgment dismissing her claim for negligence against the defendants Hobart. The claim for negligence is based on the Hobarts' alleged illegal parking of their car in an unmarked intersection at N.E. 65th Street and 34th Avenue N.E. in Seattle, Washington. Plaintiff contends that defendants Hobart were either guilty of negligence per se, or the issue of their negligence raises questions of fact precluding the entry of summary judgment under CR 56.

N.E. 65th Street in Seattle is a 36-foot-wide street running in an easterly-westerly direction. A 6-foot sidewalk adjoins and runs parallel to that street to the south. Thirty-fourth Avenue N.E. is a street 26 feet wide, running in a northerly-southerly direction. A 3-foot sidewalk adjoins and runs parallel to that street on its easterly side. Thirty-fourth Avenue N.E. runs south into N.E. 65th Street at right angles, but the former does not run beyond the southerly boundary of N.E. 65th Street. It thus forms a T-intersection at that point. A pedestrian on the 6-foot sidewalk who seeks to cross over to the 3-foot sidewalk in plain view on 34th Avenue N.E. could proceed in the path of an unmarked crosswalk—a prolongation of the 3-foot sidewalk into N.E. 65th Street. A telephone pole is located on the 6-foot sidewalk approximately opposite the southerly edge of the 3-foot sidewalk on 34th Avenue N.E., across the street. A "No Parking 4-6 PM" sign is on the telephone pole, placed there by the City of Seattle.

Defendants Hobart had lived in a nearby apartment for approximately 1 year. During that period it was customary practice for motorists, including defendants Hobart, in the belief that it was legal so to do, to park cars where the

Hobart car was parked at all hours except during the 4 to 6 p.m. no parking period specified by the sign affixed to the telephone pole. The Hobarts had never been given a traffic ticket for illegal parking, and they had seen police cars, conducting radar traffic checks, parked at the same place where their car in the instant case was parked.

On the morning of March 2, 1968, the Hobarts' car, facing east, was parked on the south side of N.E. 65th Street, the front end of the car being approximately 5 feet west of the telephone pole. At about 10:20 a.m., plaintiff 6-year-old child was walking on the 6-foot sidewalk, then left it to cross to the other side of the street. In crossing, she passed between the front of the defendant Hobarts' car and the telephone pole. When she reached a point near the left front of the Hobart car, she looked east down N.E. 65th Street and then, without looking to the west, she started to run across the street. As she did so, she was struck by defendant Mrs. Baumgardner's car, then traveling in an easterly direction. Mrs. Baumgardner's view of the minor plaintiff was blocked by the Hobart car and she did not see her in time to avoid striking her.

The controlling question presented is whether the negligence claimed by the party plaintiff raises possible issues of fact precluding the entry of summary judgment.

RCW 46.61.570(1)(b)(iii) in substance provides that, with certain exceptions, no persons may park a vehicle within 20 feet of a crosswalk. See RCW 46.04.160.[1] It is conceded that the Hobart car was parked within 20 feet of the unmarked crosswalk formed by the prolongation of the 3-foot sidewalk into and across N.E. 65th Street.

The purpose of statutes such as RCW 46.61.570(1)(b)(iii) is "to prevent motor vehicles from blocking the view of other motorists entering the intersection, and to keep the way clear for pedestrians." 7 Am.

[1] We do not consider the claimed application of Seattle Traffic Code §§ 21.32.000 and .230 because the Seattle Traffic Code was not pleaded in the complaint, nor referred to in the affidavit before the trial court. See RCW 4.36.110; *Kataisto v. Low,* 73 Wn.2d 341, 438 P.2d 623 (1968); *Shoberg v. Kelly,* 1 Wn. App. 673, 463 P.2d 280 (1969).

Jur. 2d *Automobiles and Highway Traffic* § 232 (1963, Supp. 1971). *Accord,* D. Blashfield, Automobile Law and Practice § 116.30 (3d ed. 1965, Supp. 1971). The unexcused parking of an automobile in a place forbidden by legislative enactment is what amounts to negligence per se. *Tierney v. Riggs,* 141 Wash. 437, 252 P. 163 (1926). *See Greisen v. Robbins,* 36 Wn.2d 64, 216 P.2d 210 (1950); D. Blashfield, Automobile Law and Practice § 116.14 (3d ed. 1965, Supp. 1971). However, when the issue is one of reasonable care under the circumstances, the existence of lawful excuse or justification may prevent a violation of statute from being negligence per se. As stated by our Supreme Court in *White v. Peters,* 52 Wn.2d 824, 329 P.2d 471 (1958), quoting with approval from Prosser on Torts:

> "Where the statute is interpreted as intended to protect the class of persons in which the plaintiff is included [plaintiff White is included in this class], against the risk of the type of harm which has in fact occurred, the weight of authority holds that an unexcused violation is negligence in itself, and that the court must so direct the jury."

52 Wn.2d at 828. In *Burlie v. Stephens,* 113 Wash. 182, 189, 193 P. 684 (1920), our Supreme Court said:

> Circumstances may arise where it is entirely proper, in the exercise of reasonable care, to violate the ordinance . . .

The principle that the violation of an ordinance or statute may be excused or justified so as not to constitute negligence per se has also been recognized or applied in a number of Washington cases cited in the margin,[2] as well as considered or recognized in legal writings in the tort field. *See generally,* Restatement (Second) of Torts §§ 288 A, 288

---

[2]These include *Jess v. McNamer,* 42 Wn.2d 466, 255 P.2d 902 (1953); *Discargar v. Seattle,* 25 Wn.2d 306, 171 P.2d 205 (1946); *Bissell v. Seattle Vancouver Motor Freight, Ltd.,* 25 Wn.2d 68, 168 P.2d 390 (1946); *Burget v. Saginaw Logging Co.,* 197 Wash. 318, 85 P.2d 271 (1938); *Brotherton v. Day & Night Fuel Co.,* 192 Wash. 362, 73 P.2d 788 (1937); *Metcalf v. Mud Bay Logging Co.,* 170 Wash. 59, 15 P.2d 278 (1932); *Gilbert v. Solberg,* 157 Wash. 490, 289 P. 1003 (1930).

B (1965); D. Blashfield, Automobile Law and Practice § 416.2 at 43, and § 116.15 (3d ed. 1965 and 1968, Supp. (1971)); F. Harper and F. James, The Law of Torts § 17.6 at 1007 to 1011 (1956, Supp. 1968). The burden of going forward with evidence of excuse or justification as a defense to a charge of negligence per se is upon the party who has violated the statute. *Goldfarb v. Wright,* 1 Wn. App. 759, 463 P.2d 669 (1970). *See Leach v. Weiss,* 2 Wn. App. 437, 467 P.2d 894 (1970).

▮ We cannot say from the summary judgment affidavit that the defendants Hobart sustained the burden of negativing possible fact issues predicated upon excuse or justification for violating RCW 46.61.570(1)(b)(iii). It is true the excuse or justification here is not based upon some unavoidable emergency or physical disability leaving defendants Hobart with no choice but to park where they did so that it could be said that the violation was "due to some cause beyond the violator's control . . . and a violation against which reasonable prudence could not have guarded." *Jess v. McNamer,* 42 Wn.2d 466, 255 P.2d 902 (1953). Were these the basis of claimed excuse or justification for violating RCW 46.61.570(1)(b)(iii), no fact issue would exist under the facts stated by the sole summary judgment affidavit. Excuse or justification may be based on other grounds as well, *e.g.,* Restatement (Second) of Torts §§ 288 A, 288 B (1965). In the instant case, defendants rely upon the "No Parking 4-6 PM" sign as excuse or justification for parking where they did during the morning of the accident. Plaintiff disputes the validity of the justification claimed. The guardian ad litem argues that if the sign constitutes an "official traffic-control device" within the meaning of RCW 46.61.570 so as to permit an exception to the statutory prohibition of parking, it is unauthorized because it is one "inconsistent with Title 46 RCW placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning or guiding traffic." RCW 46.04.611. *See Krogh v. Pemble,* 50 Wn.2d 250, 310 P.2d 1069 (1957).

█ Whether or not the sign was authorized, however, it could not be ignored. If unauthorized by law, a motorist could treat the sign as presumptively a lawful one (*see Lyle v. Fiorito,* 187 Wash. 537, 60 P.2d 709 (1936)). In any case, it was a de facto sign. A motorist, in the exercise of reasonable care, was required to respect it. As stated in *Comfort v. Penner,* 166 Wash. 177, 6 P.2d 604 (1932):

> Travelers upon public highways are not expected to first ascertain and determine whether such signs are established in strict compliance with law, before respecting them.

166 Wash. at 183. *Fothergill v. Kaija,* 183 Wash. 112, 48 P.2d 643 (1935); *Clinkscales v. Carver,* 22 Cal. 2d 72, 136 P.2d 777 (1943). *See also, Radosevich v. County Comm'rs,* 3 Wn. App. 602, 476 P.2d 705 (1970). *Cf., McCandless v. Inland Northwest Film Serv., Inc.,* 64 Wn.2d 523, 392 P.2d 613 (1964).

█ In respecting the sign, whether de jure or de facto, it would be apparent that it permitted, but did not mandatorily require, parking at the particular spot chosen by the Hobarts. The sign in effect and at best left it optional with the Hobarts whether, during the nonprohibited hours, they would or would not park where they did. In exercising this optional choice, the Hobarts were required to act reasonably, taking into account other users of the street. Thus it can scarcely be claimed that had the Hobarts known that it was dangerous to park at the particular spot, even if it was customary practice so to do, that they would have been free of negligence in doing so in face of such known danger. *See* D. Blashfield, Automobile Law and Practice §§ 51.8, 102.41 (3d ed. 1965, Supp. 1971); 57 Am. Jur. 2d *Negligence* § 78 (1971). Similarly, if, instead of actual knowledge, they were charged with knowledge of the dangerous character of parking where they did, the same rule should apply. There is a common-law duty upon motorists to "exercise reasonable and ordinary care" to select a place of parking "so that [the car's] presence will not constitute a source of danger to other users of the highway." *Gelling v. Golden*

*Arrow Farms,* 39 Wn.2d 87, 92, 234 P.2d 539 (1951). *See also McGovern v. Greyhound Corp.,* 53 Wn.2d 773, 337 P.2d 290 (1959); *Swanson v. Gilpin,* 25 Wn.2d 147, 169 P.2d 356 (1946). *See generally,* Annot., 4 A.L.R.3d 324 (1965, Supp. 1970). This rule is consistent with the statutory rules of the road dealing with stopping, standing and parking, as well as pedestrian rights and duties. RCW 46.61.560-.580; RCW 46.61.230-.260. *See also* RCW 46.08.020-.030.

Whether the defendants Hobart, on the issue of excuse or justification, exercised reasonable and ordinary care in parking where they did in reliance upon the sign as customarily interpreted, taking into account the vision-blocking effects in so parking as to pedestrians, including the minor plaintiff, raises a question of fact. *Swanson v. Gilpin, supra.* For the reasons stated, therefore, the summary judgment was premature.

The judgment is reversed.

JAMES and SWANSON, JJ., concur.