[No. 24345. Department One. May 12, 1933.]

MYRTLE TABER, *Appellant*, v. ALEX J. BAUER *et al.*,
*Respondents.*[1]

*Kahin & Carmody* and *Paul Coughlin,* for appellant.

*Poe, Falknor, Falknor & Emory,* for respondents.

MITCHELL, J.—Mrs. Myrtle Taber, having the legal
right to maintain this action, instituted it to recover
damages for the accidental killing of her son, Gerald
Taber, six and one-half years of age, on account of the
alleged negligence of the defendants. At the trial
before a jury, upon the conclusion of the evidence on
behalf of the plaintiff, the court sustained defendants'
motions for a nonsuit, and entered a judgment dismiss-
ing the action. The plaintiff has appealed.

[1]Reported in 21 P. (2d) 1028.

The accident occurred about the middle of the after-noon, August 18, 1931, at the intersection of east Union street and Harvard avenue, in Seattle. East Union street runs east and west. Harvard avenue enters it from the north at right angles. On the corner west of Harvard avenue and north of east Union street is sit-uated a large building, known as the Knights of Co-lumbus Club, which has a broad front on east Union street. The commodious main entrance way to the clubhouse from east Union street is located somewhat east of the center of the front of the building. The entrance way extends from the property line of the building to the north curb of east Union street. Har-vard avenue, south of east Union street, runs into east Union street in a flaring manner, not at right angles, but from a southeasterly direction, so that the east curb line of Harvard avenue south of east Union street, if extended across east Union street, would strike the north side of east Union street at a point west of the west curb line of Harvard avenue as it enters east Union street from the north.

The city authorities have not marked across the sur-face of east Union street any pedestrian lane on the west side of Harvard avenue, south of east Union street, but a prolongation of the curb line running northwesterly along the west side of Harvard avenue, south of east Union street, would strike the north curb of east Union street several feet west of the main en-trance way to the Knights of Columbus clubhouse. Also, by actual use, pedestrians habitually and uni-formly use (as is known as a matter of fact and as in-dicated by wire netting on the parking strip on the north side of east Union street and a traffic sign on the parking strip on the south side of east Union street) a pedestrian way at right angles across east Union

street from the northerly end of the sidewalk on the west side of Harvard avenue, south of east Union street, thence north to the westerly side of the main entrance way to the Knights of Columbus clubhouse.

It thus appears that, by either plan, a point on the street, just in front of an automobile standing at the curb and a little east of the west line of the entrance way to the clubhouse, is situated within the intersection caused by Harvard avenue, south of east Union street, running into east Union street. Laws 1929, p. 455, § 1, subd. (j), Rem. Rev. Stat., § 6362-2.

The respondent Alex J. Bauer, a candymaker, using a closed delivery car, traveling west, stopped his car up against the curb at the entrance way to the clubhouse, the front of his car being a few feet east of the west line of the entrance way. Bauer claims to have gone into the clubhouse, making a usual semi-monthly call in the sale or delivery of candy. While Bauer was doing this, the small son of the appellant came running down the sidewalk on the north side of east Union street until, reaching the Bauer delivery car, he turned in front of it along the actual pedestrian way, and, just after clearing the Bauer delivery car, an automobile driven by respondent Thomas Brooks, traveling westerly and passing within about a foot or a foot and a half of the delivery truck, struck the boy and knocked him to the pavement three or four feet in front of the delivery truck, causing injuries from which he died.

One of the assignments of error, as bearing upon the negligence of Bauer, presents the question whether there was sufficient proof to go to the jury that Bauer stood his truck within the intersection of east Union street and Harvard avenue as it enters the street from the southeast. The trial court sustained respondents' contention that the truck was not within the intersection. From the description of the location, just

above given, we are of the opinion that the jury could not have been satisfied other than that it was within the intersection.

By another assignment, it is contended the respondents are in error in their contention, which prevailed in the trial court, that the evidence was not sufficient to sustain the charge of negligence with respect to Bauer's leaving his truck upon the pedestrian crossing so as to obstruct a pedestrian's view of automobile traffic going west and approaching the crossing, and where, at the same time, it obstructed the view of drivers of automobiles proceeding west and approaching the crossing way of pedestrians going from the north to the south side of east Union street, thus constituting an obstruction to traffic. We are satisfied there was sufficient evidence to take the case to the jury upon that point.

Section 61 of the traffic ordinance of Seattle is as follows:

"For the protection of life and limb, and for the regulation of traffic, the board of public works shall have authority to establish danger zones and other methods of traffic control, and to use discs, standards, buttons, stanchions, signs, painted lines or other means to indicate such regulation, and the removal or damaging of any such disc, standard, button, stanchion, sign, painted line, or any part thereof by anyone without authority of the chief of police is hereby prohibited."

By order of the board of public works, signs bearing the notice, "No vehicles allowed on this side in this block," had been posted and maintained between the south side of the building and the north side of the street, within knowledge of Bauer. Respondents undertake to escape or avoid the effect of proof of Bauer's violation of this ordinance, as a matter to be considered by the jury, by contending that a reasonable interpreta-

tion of the ordinance did not prevent his stopping his automobile in front of the building to go in and take an order and deliver candy, and there was some testimony of an administrative officer of the city in support of that theory of the ordinance. But, whatever the meaning of the ordinance, the question is: What were the facts, and who shall decide the facts?

Bauer, an interested and adverse witness called by the appellant, alone testified with respect to the purpose of his call, and, among other things, said that, within five minutes, he had taken his order, and nothing was left to be done but to go out and get the candy, when the accident happened. On the contrary, a disinterested witness testified that, while he did not know when the Bauer car was stopped at the entrance way, a quarter of an hour or more elapsed thereafter before the boy was struck. The truthfulness and good faith of Bauer's story, as bearing upon his negligence, was supported by none other than himself, an interested witness. The jury was entitled to disbelieve his uncorroborated testimony of his purposes, activities and whole story in connection with his going into the building. *Day v. Polley,* 147 Wash. 419, 266 Pac. 169; *Mattingley v. Oregon-Washington R. & N. Co.,* 153 Wash. 514, 280 Pac. 46.

These facts should have been submitted to the jury, as tending to show negligence and to be considered by them in connection with the further inquiry by the jury as to whether such facts constituted the proximate cause of the death of the child.

Reversed, with directions to grant a new trial.

BEALS, C. J., HOLCOMB, and MILLARD, JJ., concur.