[No. 31690.   Department One.   November 23, 1951.]

LUTTIE MCKINNEY et al., *Appellants,* v. PRESTON MILL
COMPANY et al., *Respondents.*[1]

¹Reported in 237 P. (2d) 788.

682

*Little, Burgunder & Smith* and *Malcolm J. Bell,* for appellants.

*Kahin, Carmody & Horswill* and *Pinckney M. Rohrback,* for respondents.

GRADY, J.—This action was maintained by Luttie McKinney against Preston Mill Company, a corporation, and Stephen A. McKenna, the driver of one of its trucks, to recover damages for personal injuries arising out of the truck coming violently in contact with her while she was crossing a highway. A jury returned a verdict for the defendants.

The paved public highway upon which the accident occurred has four lanes and is forty-eight feet in width. Each traffic lane is eleven feet wide. There is a graveled dividing strip four feet in width in the center of the highway. It is a nonaccess highway, except at places where it is intersected by other roads or highways. The part of the highway involved in this case is about six miles east of Seattle. The highway for some distance each way from the scene of the accident runs in an east and west direction. At this

point, a public road connects with the highway at its north boundary. This road runs westerly and parallel with the highway for some distance. It makes a slight curve to the left and enters the highway at an angle. It is referred to as an access road. There is a highway stop sign on its northerly side close to where it enters the highway. There is also a crossroad warning sign on the north side of the highway east of the intersection. The access road does not extend across the highway. There are no marked crosswalks across the highway, nor any markings to indicate the existence or location of an intersection area. Eastbound busses stop on the south side of the highway.

On December 7, 1948, at about 5:25 p. m., an eastbound bus stopped at a point opposite the place of entry of the access road, and appellant and another lady alighted. Moisture in the form of a combination of snow and rain was falling. Witnesses differed as to the extent of darkness. A car driven by appellant's husband was standing on the access road near the stop sign. The ladies started to cross the highway to the waiting automobile. The appellant testified that she looked to the west for eastbound traffic and then crossed to the graveled center of the highway. She then stopped and looked east for westbound traffic and continued to watch for such traffic as she proceeded. She observed the headlights of a westbound vehicle, which she estimated to be nine hundred to one thousand feet distant. When the ladies reached a point in the north traffic lane, they were struck by respondents' truck.

The first questions we are called upon to consider are whether the highway and access road formed an intersection as defined by our statute, and, if so, its location and that of the crosswalks. Rem. Rev. Stat., Vol. 7A, § 6360-1 (u) and (o) [P.P.C. § 284-3], defines an intersection area and a crosswalk to be:

"The area embraced within the prolongation of the lateral curb lines, or, if there be no curbs, then the lateral roadway boundary lines, of two or more public highways which join one another at an angle, whether or not such highways cross one another."

"The portion of the roadway between the intersection area and a prolongation or connection of the farthest sidewalk line or in the event there are no sidewalks then between the intersection area and a line ten (10) feet therefrom, except as modified by a marked crosswalk."

A map and two photographs in evidence portray the place where the access road comes into the highway. The map is deceptive if used to aid in locating the intersection area or the crosswalks by the statutory formula. The photographs are much more plain in that respect. The map would indicate that the access road entered the highway on a curve and flared at that point. The photographs indicate the entry of the paved part of the access road was at such an angle that the statutory formula may readily be applied.

If we understand the position of respondents correctly, it is that, even if it be conceded that the juncture of the access road with the highway made an intersection, the statute must be construed to mean that the intersection area is the space between perpendicular lines from the respective points where the lateral boundary lines of the access road touch the north line of the paved highway to its south line. It is then argued that all of the evidence on the subject shows appellant to have been within the intersection area, and, not having yielded the right of way, she was guilty of contributory negligence.

In order to furnish a basis for such a construction of the statute, it is necessary to define the words "prolongation of" as meaning at right angles to the north line of the highway, rather than a continuation or extension of the northerly and southerly lines of the access road where they intersect the north line of the highway. Webster defines the words: "that which forms an additional length; as, the *prolongations* of a jointed rod; continuation; extension."

Much can be said in favor of respondents' theory, particularly from the standpoint of a pedestrian, as in such a case he would be more able to determine the location of the unmarked crosswalk, and also to observe the traffic on the highway he is crossing than if the crosswalk was at an angle.

In view of the plain terms of the statute, and using the words "prolongation of" according to their usual meaning, it must be held that the intersection area at the place of the accident was the space between the north and south lines of the highway and a prolongation of the northerly and southerly lines of the traveled part of the access road in straight lines from their respective points of intersection with the north line of the highway to the south line thereof, and that the crosswalks were the spaces between the intersection area and lines ten feet therefrom.

We have examined the cases cited by counsel in which the courts have considered statutes defining intersections. The factual situations and the statutes applied were so different from those presented by the record before us that they cannot be accepted as a guide to the solution of our problem. Reference to our statute was made in *Taber v. Bauer,* 173 Wash. 96, 21 P. (2d) 1028, and *Gile v. Nielsen,* 20 Wn. (2d) 1, 145 P. (2d) 288. In the former case, we followed the statutory formula. In the latter, a highway divided into two highways. One of the questions in the case was whether a collision between two automobiles occurred at an intersection. We quoted our statute, and then stated:

"It is impossible to tell from the exhibits just what area is included in the intersection, because of the way in which the highways join, and because there is no definite indication of the lateral roadway boundary lines."

This case does no more than to indicate difficulty in trying to apply our statute to the complicated situation existing.

If a statute defining an intersection area is couched in plain language, the courts must not by a process of construction take upon themselves the burden of outlining such areas whenever it may seem that to follow the statute will result in inconvenience to the traveling public, or make it more difficult to follow statutory rules of the road. No trouble is encountered in the case of crossroads at right angles with each other. It is when the roads are at an acute angle with each other, or where there is a flare of one road

where it enters another, or where one road enters the other on a curve, that the most serious problems are presented. Difficult, and many times impractical, situations may arise by following the statute, and the traveling public may become confused and not always be sure what action to take or the course to follow, thus increasing traveling hazards. But when the legislature sets the pattern, the courts if at all possible must follow it and apply the rules of the road accordingly. The same, if not greater, difficulty is encountered where the pedestrian is concerned. He must not use the intersection area, but must confine himself to the crosswalks if he is to have the right of way.

Roads or streets may come together in such a complicated way that to mark out the intersection area by the statutory method would bring results not contemplated by the legislature. In such cases, it will be necessary for the court to determine the boundaries of the intersection area so that the jury may apply the rules of the road to the facts of the particular case. If, however, there be a factual dispute over the location of the intersection area, the situation may present a mixed question of law and fact.

In its instructions to the jury, the court proceeded upon the theory that the juncture of the access road and the highway did not form an intersection, and also that no crosswalks were involved. The jurors were instructed upon the subject of yielding the right of way by a pedestrian crossing a highway between intersections. The appellant proposed instructions setting forth the statutory definition of an intersection and what constituted a crosswalk at an intersection. The latter instruction, if given, would have informed the jury that the operator of a vehicle shall yield the right of way to a pedestrian within the unmarked crosswalk of any intersection by slowing down, or stopping if need be.

We are of the opinion that the court was in error when it adopted the view that an intersection was not formed by the juncture of the access road and the highway, and in not giving appropriate instructions upon the theory that an intersection area was formed and that there were

in existence crosswalks (unmarked) as defined by our statute.

The error was prejudicial to appellant. If she was crossing the highway between intersections when the accident occurred, then in following the instructions given the jury might well have concluded that she was guilty of contributory negligence in not yielding the right of way to the oncoming truck. Her situation would have been much like that presented in *Shiels v. Purfeerst, ante* p. 252, 235 P. (2d) 161. If, however, appellant was crossing the highway at an intersection, then the question would arise whether she was on the crosswalk. If she was on the crosswalk, then it was the duty of the driver of the truck to yield the right of way to her. Rem. Supp. 1949, § 6360-99.

If the evidence was of such a character that we could say as a matter of law that the appellant, when she was struck, was not within an unmarked crosswalk, we might affirm the judgment irrespective of the wrong theory upon which the case was submitted to the jury; but as we view the record, there is evidence from which a jury might conclude appellant was on an unmarked crosswalk when she was struck by the truck. The case having been submitted to the jury on an incorrect theory necessitates the granting of a new trial.

The other error of which appellant complains is in the latitude given respondents on cross-examination of respondent Stephen A. McKenna after he was examined by appellant as an adverse witness. An objection was made to the extent of the cross-examination. Counsel for respondents stated that he was going to offer his whole case with such witness and was not going to put him back on the witness stand. The court directed counsel to proceed with the cross-examination.

■ When a party to an action is called as an adverse witness, it is usually to obtain evidence of facts peculiarly within the knowledge of such witness. The witness may be interrogated by his counsel, but the examination should be confined to the subjects upon which he has testified.

The trial court has a wide discretion with reference to the scope of the cross-examination, but we cannot recognize such a broad rule as suggested by respondents. We shall assume that on a new trial the error claimed by appellant will not recur.

The exceptions taken with reference to the proposed instructions were not sufficient to comply with our rule of court if they are taken by themselves. However, such instructions presented a theory opposite to the one adopted by the court in instructing on the same subject. The exceptions taken to the latter instruction, coupled with the other exceptions, were sufficient to inform the court upon the question of law in dispute.

The judgment is reversed and the cause remanded for a new trial.

SCHWELLENBACH, C. J., MALLERY, DONWORTH, and WEAVER, JJ., concur.

[1] Reported in 237 P. (2d) 781.