[No. 33693. Department Two. May 9, 1957.]

JOHN H. KROGH, *Appellant*, v. OTTIS PEMBLE *et al.*,
*Respondents.*[1]

*Critchlow & Williams* and *Sanford Skidmore*, for appellant.

*Hugh B. Horton*, for respondents.

FOSTER, J.—While crossing a street intersection in Kennewick, appellant was struck by respondent's automobile and

[1]Reported in 310 P. (2d) 1069.

sued to recover his damage for the resulting injuries. All issues of respondent's negligence were withdrawn, and the jury was instructed that appellant's contributory negligence barred recovery unless respondent had the last clear chance to avoid the accident. Upon the verdict for respondent the action was dismissed, from which this appeal is taken.

The issue raised by five of the six assignments of error is whether the appellant was a jaywalker or was in the crosswalk; the answer to which depends upon the existence or nonexistence of a statutory crosswalk.

Avenue C, which extends east and west, has six marked lanes; that is, two each for east and west-bound traffic, and a parking lane on each side of the street. It is intersected at a right angle by Cedar street from the south, forming a "T." On the west side of Cedar street at the intersection with avenue C, a crosswalk is marked in the statutory manner.[2]

The crosswalk on the east side of the intersection was marked in 1948, and the boundaries painted; but since 1952, such markings have not been renewed so that at the time of the accident, while perceptible, were scarcely visible to those in passing vehicles. Nevertheless, appellant contends it is still a crosswalk, the statutory definition of which is set out in the margin.[3] In 1952, the west crosswalk was marked and an overhead sign suspended bearing the legend "MARKED CROSSWALK." Parking was then authorized up to the former marked boundaries of the east crosswalk, except for diagonal sections at each end thereof in which the words "No PARKING" were painted.

Shortly after one o'clock p. m. on the day in question, appellant started to cross the east, or old, crosswalk from the north to the south side of avenue C, but stopped when

[2] "'Marked Crosswalk.' Any portion of a roadway distinctly indicated for pedestrian crossing by lines or other markings on the surface thereof." Laws of 1937, chapter 189, § 1 (aa), p. 835 (RCW 46.04.290).

[3] "'Crosswalk.' The portion of the roadway between the intersection area and a prolongation or connection of the farthest sidewalk line or in the event there are no sidewalks then between the intersection area and a line ten (10) feet therefrom, except as modified by a marked crosswalk." Laws of 1937, chapter 189, § 1 (o), p. 835 (RCW 46.04.160).

one-half way through the inside of the west-bound traffic lane, at which point he observed three cars approaching from his left, the first of which was respondent's. Appellant then turned his attention to traffic approaching from the west, and while so standing, waiting for east-bound vehicular traffic to pass, was struck by the respondent's car.

No claim is made the respondent sounded her horn, although aware of appellant's position of peril when four or five car lengths away.

The court instructed the jury that the appellant was not in a proper crosswalk nor did he exercise ordinary care for his own safety, and was, therefore, guilty of contributory negligence, barring recovery unless the jury found respondent had the last clear chance to avoid the accident.

Error is assigned on the refusal to instruct respecting the duty of a motor vehicle operator toward a pedestrian in a crosswalk, or to define "crosswalk," and "intersection," or that respondent was under any duty to sound the horn. It is undisputed that the city of Kennewick, by ordinance, adopted the state statutes regulating traffic.

The respondent's argument is: That the existence of the plainly marked and designated crosswalk on the west side, a distance of sixty feet, and the fading of the markings on the original east crosswalk, and the new markings sanctioning parking on that side as recognized traffic devices, preclude the existence of a crosswalk on the east side.

■ The evidence leaves little room for doubt the original markings were so dimmed by time that it was not a marked crosswalk within the statutory definition of that term,[2] or at least it may be so assumed for present purposes. The statute declares[3] a crosswalk to be the portion of the roadway between the intersection area[4] and a prolongation or connection of the farthest sidewalk line, or in the ab-

---

[4]" 'Intersection Area.' The area embraced within the prolongation of the lateral curb lines, or, if there be no curbs, then the lateral roadway boundary lines, of two or more public highways which join one another at an angle, whether or not such highways cross one another." Laws of 1937, chapter 189, § 1 (u), p. 835 (RCW 46.04.220).

sence of sidewalks, between the intersection area and a line ten feet therefrom. It is unnecessary to determine when the east crosswalk ceased to be a marked one. Certain it is, however, under the statute, it was an unmarked crosswalk whenever it ceased to be a marked one, but in that event, included only the area designated by statute and not the extended or modified area of the formerly marked crosswalk. Unless this is so, every pedestrian is in peril in using any crosswalk in which the markings are faded or covered by snow or ice.

■ Respondent urges upon us the argument that the establishment of a marked crosswalk on the west side of the intersection in question, precludes the existence of a statutory crosswalk on the opposite side of the street; but we find nothing in the statute to sanction this view. While the statute invests local authorities[5] with a very wide discretion in establishing and locating marked crosswalks, there is no other exception to the definition of "crosswalk." The California motor vehicle code, on the other hand,[6] grants local authorities the right to place signs prohibiting pedestrian crossings, in which event a statutory crosswalk does not exist.

■ Cedar street did not extend beyond the northern boundary of avenue C but formed a "T" intersection at that point. There were no paved sidewalks on the south side of avenue C, although the curbs are in place, but the covering of sidewalks with cement is not necessary to the existence of a statutory or unmarked crosswalk,[7] nor

---

[5] "'Local Authorities.' Every county, municipal, or other local public board or body having authority to adopt local police regulations under the constitution and laws of this state." Laws of 1937, chapter 189, § 1 (z), p. 835 (RCW 46.04.280).

[6] "Notwithstanding the foregoing provisions of this section, there shall not be a crosswalk where local authorities have placed signs indicating no crossing." California Vehicle Code § 85 (c).

[7] "Section 85 defines an unmarked crosswalk as that portion of a roadway ordinarily included within the prolongation of the boundary lines of sidewalks at intersections of streets which meet at approximately right angles. We think the latter section, in referring to sidewalks, was intended to refer to the space between the property line and the curb

does the fact that this was a "T" intersection affect the existence of a crosswalk.[8] In fact, when crossroads intersect at right angles, there is no difficulty in determining the existence of statutory or unmarked crosswalks.[9]

Appellant insists a statutory crosswalk cannot exist here because RCW 46.48.270[10] prohibits parking within twenty feet of a crosswalk, whereas markings permitted parking up to the former crosswalk, and the diagonal markings at each end of the formerly marked crosswalk were traffic devices. [RCW 46.04.610][11]

We find no merit in this argument. The actions of the local traffic authorities establishing the marked crosswalk on the west side of the intersection involved, and the parking and no parking zones, have no place in determining whether the original marked crosswalk on the east side of the intersection was a statutory crosswalk or not. The two streets intersected at right angles, and while the sidewalks had not been covered with concrete, the curbs were in place, in consequence of which *McKinney v. Preston Mill Co.*, 39 Wn. (2d) 681, 237 P. (2d) 788, is singularly applicable.

---

and not merely that portion thereof which happens to be covered with cement or other material making an improved walk." *Colburn v. Schilling*, 41 Cal. App. (2d) 541, 545, 107 P. (2d) 279.

[8] *Ellis v. Glenn*, 269 S. W. (2d) (Ky. App.) 234 (1954); *Brown v. Bendix Radio Division of Bendix Aviation Corp.*, 187 Md. 613, 51 A. (2d) 292.

[9] "No trouble is encountered in the case of crossroads at right angles with each other. It is when the roads are at an acute angle with each other, or where there is a flare of one road where it enters another, or where one road enters the other on a curve, that the most serious problems are presented." *McKinney v. Preston Mill Co.*, 39 Wn. (2d) 681, 237 P. (2d) 788.

[10] ". . . Within twenty feet of a crosswalk at an intersection; . . ." RCW 46.48.270 (6).

[11] " 'Traffic Devices.' All signs, signals, markings and devices not inconsistent with this act placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning or guiding traffic." Laws of 1937, chapter 189, § 1 (ggg), p. 835 (RCW 46.04.610).

Under Oregon's motor vehicle code, an unmarked crosswalk could not exist unless there are sidewalks;[12] but the statutes of this state contain no such limitation so both a marked and an unmarked crosswalk may parallel each other in the same intersection.

Section 85 (a) of the California motor vehicle code, set out in the margin,[13] provides for unmarked crosswalks, and in *Kashevaroff v. Webb*, 73 Cal. App. (2d) 177, 166 P. (2d) 306, the marked crosswalk paralleled the unmarked crosswalk approximately one hundred seventy-five feet to the west.

 There remains for consideration the assignment respecting respondent's failure to sound the horn. Because the court is not required to rewrite a requested instruction to eliminate inapplicable portions, we find no error in the refusal to give requested instruction No. 7. The inclusion of the words "or at such times and under such conditions as required by law" allowed the jury to speculate and rendered the instruction objectionable. *Knight v. Pang*, 32 Wn. (2d) 217, 201 P. (2d) 198.

Because the court erred in withdrawing the issue of the respondent's negligence and in rejecting the requested instructions on crosswalks, the judgment is reversed and a new trial is granted.

HILL, C. J., and DONWORTH, J., concur.

SCHWELLENBACH and ROSELLINI, JJ., concur in the result.

---

[12]*Leap v. Royce*, 203 Ore. 566, 279 P. (2d) 887.

[13]"That portion of a roadway ordinarily included within the prolongation or connection of the boundary lines of sidewalks at intersections where the intersecting roadways meet at approximately right angles, except the prolongation of any such lines from an alley across a street." California Vehicle Code § 85 (a).

---

June 24, 1957. Petition for rehearing denied.