NICHOLS et al., Appellees,

v.

COAST DISTRIBUTION SYSTEM et al., Appellants.

[Cite as *Nichols v. Coast Distrib. Sys.* (1993), 86 Ohio App.3d 612.]

Court of Appeals of Ohio,
Summit County.

No. 15677.

Decided March 3, 1993.

**614**

_Mark Hilkert,_ for appellees.

_William Pgau III,_ for appellants.

QUILLIN, Presiding Judge.

Appellants, Coast Distribution Systems and Tyrone Bott (collectively "Coast"), appeal from the trial court's judgment which ordered them to pay $5,120,810 in damages to appellants, Cara Nichols, Louise Nichols, and Allen Nichols (collectively "Nichols"). We affirm.

On July 9, 1987, at approximately 10:00 a.m., Cara Nichols was driving west on Barlow Road in Boston Township approaching the intersection of Barlow and State Route 8. When Nichols reached the intersection, she stopped at the stop sign for a few seconds before attempting to enter onto Route 8. As she pulled out, she was struck by a Yellow Freight truck which was travelling north on Route 8.

Nichols sustained serious injuries and has no memory of the accident. According to the testimony of witnesses, Nichols's view to the south of Route 8 had been obstructed by a truck, owned by Coast Distribution and driven by Bott, parked on the east berm of Route 8, just south of the Barlow Road intersection. Nichols brought this action against Coast, as well as others, including Yellow Freight and the driver of the Yellow Freight truck. At the close of the plaintiffs' case, Yellow Freight and its driver were granted a directed verdict.

The jury entered a general verdict in favor of Nichols. The jury found Bott to be sixty-seven percent negligent and Cara Nichols thirty-three percent negligent. The jury's damage award of $7,643,000 was reduced accordingly.

Coast appeals and raises three assignments of error.

### Assignment of Error I

"The judgment is not supported by the weight of the evidence."

■ Coast focuses its argument on specific defense evidence which, according to Coast, should have swayed the jury. Specifically, Coast presented expert testimony that if Nichols had stopped and looked behind the Coast truck for two seconds, she should have been able to see the Yellow Freight truck before it became obscured by the Coast truck. From this evidence, Coast contends that the jury had to infer that Nichols could have avoided the accident, and that her negligence was the primary cause of the accident.

■ However, as a reviewing court, we cannot act as trier of fact and determine that the jury should have made certain inferences or reached certain conclusions based on the evidence. It was for the jury to determine the weight to be given this evidence. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

■ To prevail in its argument that the jury's verdict was against the manifest weight of the evidence, Coast must demonstrate that there was not competent, credible evidence going to all the essential elements of the case. *Quick Air Freight, Inc. v. Teamsters Local Union No. 413* (1989), 62 Ohio App.3d 446, 456, 575 N.E.2d 1204, 1210–1211. Coast does not demonstrate that there was a lack of evidence to support the jury's verdict. The first assignment of error is overruled.

## Assignment of Error II

"The court erred in instructing the jurors that Appellant Bott owed a duty of due care to Ms. Nichols in addition to the duty imposed by R.C. 4511.68, and further erred in allowing evidence on the issue of ordinary care."

No one disputes that Bott had a duty under R.C. 4511.68 not to park within twenty feet of the intersection's crosswalk. Whether Bott had done so was in sharp dispute. Coast contends that this statutory duty so thoroughly defined Bott's duty in this situation that he had no additional common-law duties. Thus, Coast argues, the trial court should have instructed the jury only on Bott's statutory duty and not on a duty of ordinary care. We disagree.

■ Although violation of a statutory duty may constitute negligence, compliance with the statute does not necessarily establish ordinary care. As a general rule, the standard of care prescribed by a statute is a minimum standard of care. One who merely complies with a statute may still be found negligent, in certain situations, for failing to take the additional precautions that a reasonable person would. 57A American Jurisprudence 2d (1989) 674, Negligence, Section 752; 2 Restatement of the Law 2d, Torts (1965) 39, Section 288C.

In some instances, a statute defines a duty so thoroughly that it applies in all situations and replaces common-law duties. However, these cases are the exceptions, not the rule. Coast bases its argument on two such Ohio cases.

In *Thompson v. Ford* (1955), 164 Ohio St. 74, 57 O.O. 96, 128 N.E.2d 111, the Supreme Court did not hold, as Coast suggests, that all parking statutes have replaced common-law standards of care. The statute at issue in *Thompson* detailed specific parking light requirements for parking an automobile at night. The only claim of negligence raised in that case was the failure to have lights upon a parked automobile. The court determined that because this particular statute "prescrib[es] minutely a course of conduct as to lights * * * and * * * elaborately describes the limitations and exceptions as to the requirement of lights, * * * it lays down a statutory standard of care which replaces the precautions enjoined by common law." *Id.* at 81, 57 O.O. at 99–100, 128 N.E.2d at 116.

Coast also cites *Campbell v. Daniels Motor Freight, Inc.* (1966), 8 Ohio App.2d 244, 37 O.O.2d 240, 221 N.E.2d 470, which held that if one parks a vehicle in compliance with all statutory requirements, no civil liability will result merely because the vehicle was left so parked for a few days. The mere passage of time was not sufficient to create an issue of common-law negligence. *Id.*

Unlike *Thompson,* our case does not deal with a statute which minutely prescribes the course of conduct which should be followed in every situation. R.C. 4511.68(F) merely required Bott not to park within twenty feet of the crosswalk at the intersection. This statute sets forth a minimum standard to apply to all drivers parking near any intersection. The statute fails to address the potential factual variables which might create additional danger, and which would require a driver to exercise additional care when parking near an intersection. Numerous factors could affect the extent to which a driver should exercise additional care: size of vehicle, speed of traffic, traffic signs or signals on each road, curves or hills, weather conditions, other available parking options, etc.

Nichols predicated her negligence claim not only on a violation of R.C. 4511.68, but also on Bott's alleged breach of his common-law duty in the particular factual setting of this case. The evidence showed that State Route 8 was a heavily traveled and relatively high-speed road. Bott parked his large truck just off the side of this road. Even Coast admits that the truck was near enough to the Barlow Road intersection that it at least partially obstructed the southern view of State Route 8 from Barlow Road. As there was no traffic light or stop sign on State Route 8, it was necessary for drivers approaching from Barlow Road to observe traffic beyond the Coast truck to enter safely onto State Route 8. There was also evidence that Bott not only could have parked in the Kamper City

parking lot, but that Kamper City employees had requested that he do so. Delivery trucks normally parked in the parking lot, not on the side of the road.

The present case is distinguishable from *Thompson* and *Campbell.* There was an issue of common-law negligence in this case, and the trial court did not err by so instructing the jury. The second assignment of error is overruled.

### Assignment of Error III

"The court erred in instructing the jurors that they could excuse Ms. Nichols' negligence in violating her statutory duty under R.C. 4511.43 if they determined that compliance with the statute was 'impossible.'"

R.C. 4511.43(A) provides:

"Except when directed to proceed by a law enforcement officer, every driver of a vehicle or trackless trolley approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After having stopped, the driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection or junction of roadways."

 Coast argues that the trial court should not have instructed the jury on the impossibility defense, and that this error prejudiced Coast because it affected the jury's apportionment of fault between Coast and Nichols. In other words, Coast contends that if the trial court had not given this instruction, the jury would have found Nichols more than thirty-three percent negligent.

Although we agree that the instruction was improper, we do not agree that it affected the jury's verdict. The Supreme Court discussed the impossibility defense in *White v. Ohio Dept. of Transp.* (1990), 56 Ohio St.3d 39, 564 N.E.2d 462. In that case, one driver failed to stop at a stop sign that was allegedly obscured by foliage. The trial court ruled that the driver was guilty of negligence as a matter of law. The court of appeals reversed the trial court. The Supreme Court, in affirming the court of appeals, held:

"Our prior cases have recognized that a person may be excused from civil liability for failure to comply with traffic laws where circumstances make it impossible for the driver to comply. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212, paragraph one of the syllabus; *Bush v. Harvey Transfer Co.* (1946), 146 Ohio St. 657, 33 O.O. 154, 67 N.E.2d 851, paragraph two of the syllabus. In the instant case, the Klyza estate claims that compliance with the stop sign was impossible because foliage obscured the sign.

However, impossibility does not necessarily arise just because a traffic sign is obscured or partially obscured. In particular cases, there may be circumstances which would indicate to a reasonable and prudent person that he should stop at an intersection despite the obscuring or partial obscuring of a stop sign. Conversely, there may be situations where the stop sign is visible, but other factors render compliance impossible. Each case should be evaluated on its own facts, employing the principles we have set forth in *Smiddy* and *Bush, supra.*" *Id.* at 44, 564 N.E.2d at 467.

In *Smiddy*, the defendant driver lost power and stopped on an Interstate highway. Before he put out the statutorily required warnings, his truck was struck from the rear. The Supreme Court held that summary judgment could not be granted on the ground that compliance was impossible unless reasonable minds must conclude that there was no way that the driver could have complied. By analogy, a jury must find that there was no way to comply with a safety statute before the impossibility defense may stand. *Bush,* also a disabled vehicle case, stands for the same proposition.

Although the "sudden emergency" cases are different, they apply a very strict standard for excuse from statutory obligations. *Zehe v. Falkner* (1971), 26 Ohio St.2d 258, 55 O.O.2d 489, 271 N.E.2d 276; *Oechsle v. Hart* (1967), 12 Ohio St.2d 29, 41 O.O.2d 215, 231 N.E.2d 306; *Spalding v. Waxler* (1965), 2 Ohio St.2d 1, 31 O.O.2d 1, 205 N.E.2d 890; *Mapes v. Opper* (1983), 9 Ohio App.3d 140, 9 OBR 205, 458 N.E.2d 892. While the narrow application of the sudden emergency defense may seem harsh, "[t]he rule seems less harsh if we look at it from the point of view of the injured * * * [party] * * * [who] was entirely free from fault." *Spalding* at 8, 31 O.O. at 5, 205 N.E.2d at 895.

It was not impossible for Nichols to yield the right of way to the moving truck. There are other possible actions that Nichols could have taken rather than blindly pull onto a busy, high-speed road. She could have waited until she could see, or turned right, or even turned around. Nothing in the facts justify her pulling in front of lawfully traveling vehicles. This requirement looks less harsh if we look at it from the point of an innocent party who might be injured by Nichols's choice to pull blindly onto State Route 8.

In spite of the error of the court's charge, it is apparent that the jury did not find that it was impossible for Nichols to comply with the statute. If the jury had done so, it would have found no negligence on her part. Coast argues that had the jury been properly charged it might have found Nichols's negligence to have been greater. We believe this is mere speculation. Prior to the impossibility instruction, the trial court explained that Nichols had both a statutory and common-law duty to yield the right-of-way to the Yellow Freight truck. The court elaborated on Nichols's duty as follows:

"Plaintiff Nichols had a duty to look at such times and places in a manner that would make her looking effective, and she must wait and travel at a speed slow enough to stop and avoid entering into the path of the yellow freight truck which had the right-of-way. If Plaintiff Cara Nichols failed to yield the right-of-way, then she was negligent.

"I tell you that if a driver's vision is completely obscured, it is his duty to exercise ordinary care to slow down or stop, if necessary, until his vision is, at least in part, restored."

The court further instructed the jury to first determine whether Bott was negligent and whether Nichols was negligent before it made any determination of whose negligence was the greater cause of the accident. The jury was instructed that it could either find Nichols negligent or not negligent. The jury determined that Nichols was negligent, thereby rejecting the impossibility defense. Therefore, the improper instruction did not prejudice Coast. The third assignment of error is overruled.

### Assignment of Error IV

"The court erred in failing to dismiss Ms. Nichols' negligent entrustment claim and in allowing evidence of Mr. Bott's prior traffic violations to be presented to the jury."

█ Coast argues that Nichols's negligent entrustment claim should have been dismissed because Coast admitted that Bott was within the scope of employment at the time of the accident and that Coast was responsible for Bott's negligence, if any. Thus, according to Coast, Nichols had no need to pursue her negligent entrustment claim. Coast further argues that because Bott's driving record was only relevant to the issue of negligent entrustment, it should not have been admitted. It is difficult to find fault with Coast's argument. However, the Supreme Court in *Clark v. Stewart* (1933) 126 Ohio St. 263, 185 N.E. 71, has ruled otherwise. Therefore, we are bound to follow the rule set forth in *Clark*. The fourth assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

CACIOPPO, J., concurs.

BAIRD, J., dissents.

MARY CACIOPPO, J., retired, of the Ninth Appellate District, sitting by assignment.

Baird, Judge, dissenting.

I would sustain the second and third assignments of error, reverse the judgment, and remand the case for a new trial.