[No. A125209. First Dist., Div. One. Dec. 30, 2010.]

CONNIE B. LAWSON et al., Plaintiffs and Appellants, v.
SAFEWAY INC. et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.B.

402

COUNSEL

James A. Wyatt for Plaintiffs and Appellants.

Reed Smith, Raymond A. Cardozo, Dennis Peter Maio; Gordon & Rees and Charles S. Custer for Defendant and Appellant Safeway Inc.

Ronald W. Beals, David Gossage, Karl H. Schmidt and Lora Dorin Curtis for Defendant and Appellant Department of Transportation.

OPINION

**MARCHIANO, P. J.**—A large Safeway Inc. tractor-trailer was parked legally on the side of U.S. Route 101 (101) close to an intersection near Crescent City. The position of the tractor-trailer blocked the view of oncoming traffic for a driver attempting to cross and turn onto 101. The driver's pickup truck collided with motorcyclist Charles Lawson, whose wife Connie B. Lawson was riding with him as they traveled on 101. The Lawsons filed suit for personal injuries against Safeway, the driver of the Safeway truck, the driver of the pickup, and the State of California. A jury awarded substantial damages to plaintiffs and apportioned 35 percent fault to Safeway, 35 percent to the State of California, and 30 percent to the driver of the pickup.

The primary issue on appeal is whether the driver of the Safeway truck owed a duty of care to those injured in the accident when he parked in an area that was not prohibited by the Vehicle Code or any other statute or ordinance.

The principal consideration in deciding whether a duty is owed is the foreseeability of the harm (*Dillon v. Legg* (1968) 68 Cal.2d 728, 740 [69 Cal.Rptr. 72, 441 P.2d 912] (*Dillon*)), which " 'is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct' " (*Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57 [192 Cal.Rptr. 857, 665 P.2d 947] (*Bigbee*)). We must also be mindful of "the extent of the burden to the defendant and consequences to the community" of imposing the duty at issue. (*Rowland v. Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561] (*Rowland*).)

When we drive and park, we will frequently block nearby views to some extent. The risk of collisions created thereby must not, in the vast majority of

cases, create any exposure to liability because it is an inevitable, everyday aspect of today's driving with a myriad of SUV's, vans, and large trucks on the road.

We are nevertheless persuaded that a duty to park safely, as well as legally, was owed because of the particular facts of this case, where the parked vehicle was a 65 feet long, 13 1/2 feet tall, 8 1/2 feet wide commercial truck and the evidence showed that the drivers of such trucks are or should be professionally trained to be aware of the risk of blocking other drivers' sight lines when parking; the truck was parked at a high-speed well-traveled intersection; and a safe parking spot was available right around the corner. In the final analysis, the line to be drawn is between a risk of harm that is unreasonably great and one that is not. (*Dillon, supra*, 68 Cal.2d at p. 739.) Under the circumstances, as we explain below, we conclude that the risk of harm was sufficiently great that a jury should have been allowed to determine whether the driver of the truck, in parking where he did, bore some responsibility for the accident.

We affirm the judgment for plaintiffs and, for the reasons set forth in the unpublished portion of the opinion, the order denying their motions for expert witness fees and prejudgment interest.

## I. BACKGROUND

The accident occurred on a clear afternoon in July 2005, at the intersection of 101 and Anchor Way, near Crescent City. Route 101 at that point has a speed limit of 50 miles per hour, and is a three-lane road with southbound and northbound lanes, and a center lane for left turns. There is a stop sign on Anchor Way where it intersects 101 from the west and forms a T-shaped intersection. The Anchor Beach Inn is located just north of the intersection on the west side of 101 next to the southbound lane.

Defendant Shawn Kite was driving a pickup truck east on Anchor Way and wanted to make a left-hand turn onto 101 going north, which required crossing 101's southbound lane. When Kite reached the stop sign on Anchor Way at the intersection with 101 and looked toward the southbound 101 lane to his left, his view was obstructed by a large (13 1/2 feet tall, 8 1/2 feet wide, 65 feet long) Safeway tractor-trailer truck. The front of the truck, which was parked parallel to 101 in front of the Anchor Beach Inn, was approximately 80 feet to Kite's north. Plaintiff Charles Lawson was riding a trike motorcycle with his wife, plaintiff Connie Lawson, in the backseat, heading south on 101 at 35 to 40 miles per hour.[1] Mr. Lawson did not recall noticing

---

[1] Forty miles per hour is the equivalent of moving at approximately 58 feet per second.

the Safeway truck before the accident, but testified that he saw nothing indicating that there was an intersection at Anchor Way as he approached it.

Kite testified that he crept forward past the stop sign, trying to see around the Safeway truck, and looking back to the right to check for traffic coming north on 101. Kite said that he could not see the Lawsons' motorcycle approaching until his pickup was about halfway out into the southbound 101 lane. Kite accelerated across the lane trying to avoid the Lawsons, but they collided with the left side of his pickup. Mrs. Lawson was thrown from the motorcycle and was seriously injured in the collision.

Larry Neuman, an engineer and accident reconstruction specialist, testified for plaintiffs that, according to the Department of Transportation's (CalTrans) highway design manual, a driver in Kite's position should have been able to see 550 feet along 101 to safely cross the 50-mile-per-hour highway. CalTrans's personnel checked sight lines at the intersection when the Anchor Beach Inn was built in the late 1990's, and determined that the view from Anchor Way, when unobstructed, extended 1,500 feet along the southbound 101 lane. However, Neuman testified that with the Safeway truck blocking the view, a driver with the front of his vehicle at the stop sign on Anchor Way could see only 125 feet down Highway 101; if the driver moved forward so that his eyes were level with the stop sign, he could see only 144 feet. A driver who pulled the front of his vehicle out to the edge of the southbound lane of 101 could see 366 feet, but it would be difficult for the driver to know precisely where the southbound lane began because the line marking the western edge of the lane ended 126 feet to the north of the intersection. In Neuman's opinion, the Safeway truck thus created a dangerous condition that posed a "significant risk of vehicle conflict" at the intersection.

Dave O'Brien, a California Highway Patrol officer who investigated the accident, testified that Kite needed to pull up close to the southbound 101 lane, 20 feet beyond the Anchor Way stop sign, to safely see around the truck. Clay Campbell, an accident reconstruction expert retained by Safeway and CalTrans, noted that the 2004 California Driver's Handbook published by the Department of Motor Vehicles states: "[M]ake sure you have a good view. If your view of a cross street is blocked by a building or a row of parked cars, inch forward slowly until you can see." Campbell opined that these recommendations established the standard of care for a driver in Kite's position. Neuman conceded that, given the speed at which the Lawsons were driving, Kite should have been able, with 366 feet of visibility at the edge of the southbound lane of 101, to safely negotiate the intersection.

The driver of the Safeway truck, Kenneth Wilburn, testified that he had been parking the truck in front of the Anchor Beach Inn since 2004, and had

parked there without incident 20 to 40 times before the day of the accident. He drove at night and slept during the day, and Crescent City was a layover point during his deliveries. He said that when he pulled in front of the Anchor Beach Inn he attempted to get as far away as possible from the southbound lane of 101, and when he left the hotel he simply drove forward back into that lane. The curb in front of the hotel was not painted red, there were no signs that prohibited parking, and Wilburn said that he confirmed with a manager and a receptionist at the hotel that he was permitted to park there. Hotel personnel told him not to park on the other side of the hotel because the truck would block views of the beach. Sara Wilson, the hotel receptionist who spoke with Wilburn, testified that large trucks like Wilburn's parked in front of the hotel almost every day.

Safeway's written policies required its truck drivers to be both legally and safely parked when they went off duty. Wilburn said that Safeway never advised him to consider other drivers' sight lines when he parked his truck, that he was not concerned with blocking views when he parked at the Anchor Beach Inn, and that he did not consider whether there were any alternative places to park near the hotel.

John Riggins, a truck driving expert, opined for plaintiffs that Wilburn did not use reasonable care in parking the truck because of how the truck blocked views at the intersection. Riggins, who had been a supervisor at a professional truck driving school, testified that drivers like Wilburn need special licenses, and are trained on how and where to park, including the need to check sight lines to avoid obstructing the views of other motorists. Riggins said that Wilburn had other places to park that would have been safe, including around the corner on Anchor Way, or that he could have left the trailer part of his truck at a nearby Safeway facility. Riggins acknowledged that it was legal for Wilburn to park in front of the hotel.

Ralph Martinelli, the CalTrans traffic safety chief for the district where the accident occurred, testified that the average daily traffic volumes at the intersection were 9,000 vehicles going in both directions on 101, and 500 vehicles going in both directions on Anchor Way. Edward Ruzak, a forensic traffic engineer retained by Safeway and CalTrans, testified that these figures showed that the intersection was a relatively "low volume situation." Martinelli said that CalTrans had received no complaints about trucks parking in front of the Anchor Beach Inn. He said that only two accidents had been reported at the intersection before the one here, and that neither had involved parked vehicles obstructing views. He said that the accident rate at the intersection was lower than average for intersections of its type. Based on these records for the intersection, Ruzak opined that the design of the intersection, including the parking permitted there, did not constitute a dangerous condition that created a substantial risk of injury.

The Anchor Beach Inn required a permit from CalTrans when it was built because it encroached into the right-of-way of 101. CalTrans knew that the construction would include a newly paved shoulder of the road that created parking spaces, but there was no record that, during the encroachment permit review process, CalTrans considered how vehicles parked in front of the hotel might obstruct views from Anchor Way. CalTrans's manuals did not require consideration of parking in connection with encroachment permits, and CalTrans engineer James Graham testified that CalTrans did not evaluate how transitory objects such as parked vehicles affected sight lines at intersections. Ruzak called it "unfortunate[]" that CalTrans's manual did not address parked vehicles blocking views, and CalTrans design branch chief Lena Ashley testified that she would have expected CalTrans's traffic safety personnel to be cognizant of that problem.

The jury apportioned fault for plaintiffs' damages as 35 percent to Wilburn and Safeway, 35 percent to CalTrans, and 30 percent to Kite.

Safeway and Wilburn have appealed from the judgment, arguing that it must be reversed as to them because, as a matter of law, Wilburn owed no duty to plaintiffs, or there was insufficient evidence that his negligence was a proximate cause of plaintiffs' injuries. Plaintiffs have also appealed from the judgment, arguing that the court erred in denying their motions for expert witness fees and prejudgment interest. CalTrans is a party to plaintiffs' appeal, along with Safeway and Wilburn.

## II. DISCUSSION

A. *Safeway's Appeal*[2]

 (1) *Duty*

Safeway contends that Wilburn had no duty to avoid parking in a manner that blocked the views of other motorists at the intersection. Safeway asks us to hold that, regardless of the circumstances, no driver whose vehicle is legally parked need consider whether the vehicle obstructs the vision of others in the area.

■ "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion. [Citations.] Whether this essential prerequisite to a negligence cause of action has been satisfied in a

---

[2] Unless the context otherwise requires, subsequent references to Safeway are to Safeway and Wilburn collectively.

particular case is a question of law to be resolved by the court. [Citation.]" (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397 [11 Cal.Rptr.2d 51, 834 P.2d 745] (*Bily*).) We are mindful that the concept of duty is " 'a shorthand expression of a conclusion, rather than an aid to analysis in itself,' " and constitutes "the result of all the policy considerations leading the law to say that a particular plaintiff is entitled to protection." (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 6, p. 49.) We now consider those policy factors.

"In this state, the general rule is that all persons have a duty to use ordinary care to prevent others from being injured as the result of their conduct. (*Rowland*[, *supra*, 69 Cal.2d at p.] 112 . . . ; see Civ. Code, § 1714.)" (*Randi W. v. Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066, 1077 [60 Cal.Rptr.2d 263, 929 P.2d 582].) "Rowland enumerates a number of considerations . . . that have been taken into account by courts in various contexts to determine whether a departure from the general rule is appropriate . . . ." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 572, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624] (*Ballard*).) The factors to be balanced under *Rowland* are: "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland, supra*, 69 Cal.2d at p. 113.)

 "[T]he chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk . . . ." (*Dillon, supra*, 68 Cal.2d at p. 740.) Safeway argues that the risk of an accident like the one that transpired here was not reasonably foreseeable because no accidents involving obstructed views had previously occurred at this particular intersection. However, "a court's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard, supra*, 41 Cal.3d at p. 573, fn. 6, original italics.) As we look generally at the category of conduct involved, it is readily foreseeable that parking a large commercial truck near an intersection may obstruct the views of passing motorists and cause them to collide.

Most of the other *Rowland* factors also militate in favor of recognizing a duty in this case. Plaintiffs were unquestionably injured and, as we explain

below, Wilburn's conduct was connected closely enough to the accident to qualify as a proximate cause. Recognition of a duty would help prevent future harm because intersections will be safer if approaching traffic is clearly visible. No showing has been made that the risk involved is uninsurable. On the other hand, little or no moral blame attached to Wilburn's conduct as that *Rowland* factor has been interpreted. (See *Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 270 [80 Cal.Rptr.2d 196] ["the moral blame that attends ordinary negligence is generally not sufficient"; something more, such as bad faith or reckless indifference, is required].)

Safeway argues that the duty in question would be unduly burdensome because drivers generally "lack the training and expertise necessary to perform a sight line analysis," and there would be "no reasonable or predictable way to cabin the duty" if it were recognized. Safeway notes that "[f]or a driver of *any* vehicle to park in *any* legal space necessarily impacts the sight lines of drivers of other vehicles, since no vehicle is completely transparent." Safeway posits that the duty will cause more accidents, not less, because more cars will remain circulating in traffic as drivers, who are no longer able to pull into the first available legal parking space without potential liability, roam around searching for spaces that are safe, as well as legal. In Safeway's view, drivers should be entitled to rely on the government to prohibit parking where parking would be unsafe. Safeway submits that a duty to investigate the safety of lawful parking spots is unnecessary because the government's duty to avoid ignoring or creating dangerous conditions on public property, and drivers' duty to use reasonable care while crossing intersections, are sufficient to prevent accidents like the one here.

We agree that drivers should ordinarily have no exposure to liability if they are legally parked. We would also agree that parked vehicles often obstruct views in ways that increase the risk of nearby collisions, and that imposing liability would not be appropriate in the great majority of such situations. Obscured sight lines caused by parked vehicles are an unavoidable risk with which drivers must generally be expected to cope. But this case is different and involves a situation where the risk of foreseeable harm was, in our view, unreasonable. (See *Dillon, supra*, 68 Cal.2d at p. 739 [a duty may be found where " 'the offending conduct foreseeably involved *unreasonably* great risk of harm . . .' " (italics added)].)

We reach this conclusion for a number of reasons. First, this case involves an extremely large commercial truck. Such trucks create a greater than normal risk because by sheer size they obstruct more of the view than smaller vehicles. Second, expert testimony was presented that the drivers of such trucks receive professional training that includes, or should include, the need to take other drivers' sight lines into account when parking. Thus, while

Safeway is no doubt correct in stating that "most drivers would not expect they owe a duty other than to ensure they pick a lawful parking spot and pull fully into it," specially licensed drivers like Wilburn would be aware of the need to take extra precautions. Third, while the intersection may be lower volume compared to other portions of Route 101, 101 is a major highway thoroughfare with a high posted speed limit. The risk of serious injury is greater than normal at the intersection because of the speed of the traffic and the nature of the traffic traveling down 101. Fourth, Wilburn had other places to park without creating a hazard. Safeway's appellate brief cites a study indicating that California has the highest "commercial vehicle parking shortage" of any state in the nation, but the evidence here is that Wilburn had no shortage of safe options. While it was most convenient for him to simply pull off and drive back on to 101 in front of the Anchor Beach Inn, Riggins testified that he could have safely parked around the corner on Anchor Way. Riggins also found a number of other places "around town" where tractor-trailer trucks could be safely parked. Alternatively, Wilburn could have unhitched the trailer at a Safeway facility, a process that Riggins said would take five to 15 minutes. " 'If the actor reasonably can accomplish the same result by other conduct which involves less opportunity for harm to others, the risk incurred in the manner of doing business which resulted in injury is clearly unreasonable.' " (6 Witkin, Summary of Cal. Law, *supra*, Torts, § 868, p. 96.)

█ As we take all of these circumstances into account, Wilburn was not as a matter of law excepted from the duty he would ordinarily bear to exercise due care in the operation of his vehicle simply because he was parked legally, and the issue of his negligence in choosing where to park was properly submitted to a jury.

We recognize that imposing a duty, in exceptional circumstances, to park safely as well as legally, will require line drawing in future cases, but as the *Dillon* court stated, courts have been able "to limit liability predicated on tests largely based upon foreseeability . . . ." (*Dillon, supra*, 68 Cal.2d at p. 742.) By way of example, the court cited cases where bulldozer and truck owners were held liable "for damage caused plaintiff by a third party who can commandeer the vehicle because of the owner's carelessness in leaving the keys inside . . . . [¶] These decisions have not led to untrammeled liability. Rather, applying the foreseeability test, the courts have held that the mere act of leaving a key in an automobile, although it may possibly raise a foreseeable risk that the car will be stolen, does not increase the risk of injury . . . '[because the owner] had no reason to believe that the thief would be an incompetent driver.' [Citation.] In short, 'each case must be considered on its own facts to determine whether the [situation] in toto justifies the conclusion that the foreseeable risk of harm imposed is unreasonable, and that the

defendant owner or one in charge of a vehicle has a duty to third persons in the class of the plaintiffs to refrain from subjecting them to such risk.' [Citations.]" (*Ibid.*)

Here, as in *Dillon*, "[t]he alleged inability to fix definitions for recovery on the different facts of future cases does not justify the denial of recovery on the specific facts of the instant case; [and,] in any event, proper guidelines can indicate the extent of liability for such future cases." (*Dillon, supra*, 68 Cal.2d at p. 739, italics omitted.) It should be clear from the facts we have identified that justify recognition of a duty in this case that our holding will not clog the streets with drivers looking for safe parking spaces, and that our decision is of no concern to the driver of the Expedition who parks next to the Mini Cooper at the shopping center, however difficult it might be for the smaller vehicle to back out of its space.

While there is no California case directly on point, our finding of a duty of care appears to be consistent with the majority of cases in other jurisdictions that have considered whether liability can be imposed when trucks that blocked the views of cars or pedestrians at intersections were legally parked. In most such cases, the courts have concluded that negligence could be found even if no statute or ordinance was violated.

In *Sauerwein v. Bell* (1989) 17 Conn.App. 697 [556 A.2d 613], vehicles collided in an intersection where views were obstructed by a "large white tractor trailer truck" parked near the corner. (*Id.*, 556 A.2d at p. 614.) The injured driver sued the owner and driver of the truck for "statutory negligence" and common law negligence based on where the truck was parked, and the issue of liability was submitted to a jury on both theories. (*Id.* at p. 616.) On appeal, the court concluded that the plaintiff had not proved that the truck was parked in violation of a statute, but the fact that the truck was legally parked was not the end of the matter. The case was remanded for a new trial on the common law negligence claim.

In *Domitz v. Springfield Bottlers* (1949) 359 Mo. 412 [221 S.W.2d 831] (*Domitz*), two vehicles swerved to avoid each other at an intersection and one of them hit a pedestrian, who sued the owner of two large van trailers parked near the intersection that allegedly obstructed the views of passing motorists. The court reversed a judgment on the pleadings for the owner, stating: "If the parking of the vans in the manner described could be said to constitute negligence then it is immaterial whether the parking was a violation of an ordinance. If we take as true the allegations of the petition, and this we must do, then the parking of the vans at the point alleged created an unnecessary hazard. It is common knowledge that 'blind' intersections are points of danger for the traveling public. In this case a jury could draw the inference

from the facts alleged in the petition that the defendant company was negligent in parking the vans. Parking of trucks near intersections so as to obstruct the view of drivers of cars has frequently been held to constitute actionable negligence." (*Id.*, 221 S.W.2d at p. 832.)

In *Boese v. Love* (Mo. 1957) 300 S.W.2d 453 (*Boese*), a pedestrian was hit by a car in an intersection where views were obstructed by a delivery truck parked in front of a grocery store. The court upheld a verdict against the truck owner for negligence, and adhered to its prior holding in *Domitz, supra*, 221 S.W.2d 831 that it was immaterial whether any ordinance had been violated. (*Boese, supra*, at p. 458.) The court emphasized that the driver " 'by the exercise of ordinary care could have parked said truck at a place reasonably convenient for making deliveries to the [market], and so as not to endanger the safety of plaintiff in crossing [the road] at the place in question . . . .' " (*Id.* at p. 457, italics omitted.) "[N]o evidence established that it was necessary to park the truck in its shown position in order to deliver dairy products at the store. In fact [the driver] testified he occasionally parked the truck elsewhere while making deliveries at the store." (*Id.* at p. 458.)

In *Atlantic Mutual v. Kenney* (Ct.App. 1991) 323 Md. 116 [591 A.2d 507] (*Atlantic*), a vehicle owned and insured by the plaintiffs that was traveling on a highway, Route 170, collided with a motorist who was attempting to make a left turn onto the highway from a shopping center parking lot. The court upheld an award of damages against the owner and operator of a parked truck that blocked the views of the drivers who collided. The trial judge who heard the case "could have found that [the driver's] act in parking his 45-foot tractor trailer so as to occupy the entire curb area between the entrance and exit driveways of the shopping center would substantially obstruct the view of motorists using the exit and those proceeding on Route 170, and significantly increase the risk of an accident at that point." (*Id.*, 591 A.2d at p. 511.) The court wrote: "Even if we assume there was no violation of [a] parking statute, we conclude that the evidence was sufficient to support a finding that [the driver] was negligent in parking the tractor trailer." (*Ibid.*) The court observed that "[p]arking an ordinary vehicle too close to a driveway or an intersection might not create the same risk. An ordinary motor vehicle is less than 18 feet in length and, because of front, side, and rear windows, often provides a view of traffic beyond it." (*Ibid.*) However, the truck here "was no ordinary motor vehicle. It was a 45-foot tractor trailer, and common experience, as well as the testimony of [the drivers who collided] tells us that neither driver could see through it or over it." (*Id.* at p. 512.)

In *Quiquin v. Fitzgerald* (N.Y.App.Div. 1989) 146 A.D.2d 894 [536 N.Y.S.2d 874], a taxi attempting to cross a 55-mile-per-hour highway, Route 52, from a T-intersection collided with a car traveling on the highway;

a bus stopped near the intersection to discharge passengers had obstructed the drivers' views. The court reversed dismissal of a suit against the bus owners by a man injured in the crash, writing: "Even apart from any statutory violation [with respect to where the bus was stopped], the driver of the bus, chargeable with awareness of the heavy, work-bound traffic on Route 52 when the accident occurred, could be found guilty of ordinary negligence in partly obstructing the highway on one version of the facts [citation]." (*Id.*, 536 N.Y.S.2d at p. 876.)

In *Boehm v. Telfer* (N.Y.App.Div. 1998) 250 A.D.2d 975 [672 N.Y.S.2d 959], vehicles collided near an intersection where views were obscured by a truck parked near the corner delivering bread to a grocery store. The court reversed dismissal of a suit against the owner and driver of the truck because there were "questions of fact as to whether [the truck driver] was negligent in the manner in which he parked the bread truck given its size, proximity to the corner, distance from the curb, the angle at which it was parked and the width of the road." (*Id.*, 672 N.Y.S.2d at p. 960.) The court wrote: " 'It is well settled that owners of improperly parked [vehicles] may be held liable to plaintiffs injured by negligent drivers of other vehicles, depending on the determinations by the trier of fact of the issues of foreseeability and proximate cause unique to the particular case' [citations]. This rule is not limited to statutory violations but also applies to circumstances evidencing ordinary negligence [citations]." (*Ibid.*)

In *Perry v. Pelersi* (N.Y.App.Div. 1999) 261 A.D.2d 780 [689 N.Y.S.2d 772], the plaintiffs' son was hit by a car when he tried to run across an intersection from behind a beer truck parked near the corner. The court wrote: "[W]e agree with defendants that they have demonstrated that the truck was lawfully parked; however, we disagree with defendants' further claim that, as a matter of law, this precludes negligence liability." (*Id.*, 689 N.Y.S.2d at p. 773.) The defendants' motion to dismiss was correctly denied given the allegations and evidence that the truck had blocked the views of the driver and the child, and the truck driver had often seen children in the area during prior deliveries.

In *Nichols v. Coast Distribution System* (1993) 86 Ohio App.3d 612 [621 N.E.2d 738] (*Nichols*), a driver was injured when she was hit by a truck while attempting to enter a highway, State Route 8, after stopping at a stop sign. Her view along State Route 8 was obstructed by the defendants' truck, which was parked near the intersection; it was disputed whether the truck was within 20 feet of the intersection in violation of a statute. The defendants argued that they owed no duty to the injured driver beyond compliance with the statute, but the court disagreed, holding that "[t]here was an issue of common-law negligence in this case . . . ." (*Id.*, 621 N.E.2d at p. 741.) The

court reasoned that the statute established only "a minimum standard to apply to all drivers parking near any intersection," and there were "factual variables which might create additional danger, and which would require a driver to exercise additional care," such as "size of vehicle, speed of traffic, traffic signs or signals on each road, curves or hills, weather conditions, other available parking options, etc." (*Ibid.*) Jury instructions on a duty of due care were justified by evidence showing, among other things, that State Route 8 was a "heavily traveled and relatively high-speed road," and that there was another readily available place to park. (*Ibid.*)

Balanced against these eight cases,[3] we have found two that have accepted legal parking as a defense, even though views at an intersection were blocked.

In *Kimble v. Standard Oil Co.* (Ct.App. 1930) 235 Ky. 169 [30 S.W.2d 890], the plaintiff alleged that a truck parked diagonally at an intersection prevented him from seeing an oncoming car, and that to avoid colliding with the car he swerved and hit a telephone pole. The court affirmed a judgment for the defendant truck owners after the sustaining of their demurrer, rejecting the plaintiff's argument that he had stated a cause of action for common law negligence even if no statutory violation was shown. The court wrote: "No facts are alleged showing negligence on the part of the [defendants], and in the absence of a city ordinance controlling the subject, parking a motor vehicle on the street is not an unlawful act and no facts are alleged showing the parking was done in a negligent manner. It is alleged that appellant's view was obstructed by the automobile [*sic*: the court apparently meant the truck in question] parked on the south side of [the] street, but this would have been true had the truck been moving instead of stationary." (*Id.*, 30 S.W.2d at pp. 891–892.)

In *Graves v. Shippey* (1959) 209 Ore. 316 [337 P.2d 347], a motorcyclist was injured in a collision with a car that emerged out of a grocery store parking lot from behind a parked dairy truck. The court held that "mere blocking of [the plaintiff's] view without more, would not be negligence." (*Id.*, 337 P.2d at pp. 351–352.) If the evidence showed that the truck was situated entirely within the parking area of the store, and that no part of it extended

---

[3] In other cases where trucks have blocked views at intersections, courts have affirmed judgments for the plaintiffs without discussing whether the trucks were legally parked. (*City of Fairbanks v. Nesbett* (Alaska 1967) 432 P.2d 607; *Varner v. Perryman* (Tenn.Ct.App. 1997) 969 S.W.2d 410; see also *Williams v. Grier* (1943) 196 Ga. 327 [26 S.E.2d 698, 705] [the plaintiff "stated a cause of action based on common-law duty as well as on duty prescribed by municipal ordinance"]; *Bowen v. Baumgardner* (1971) 6 Wn.App. 18 [491 P.2d 1301, 1304–1305].)

into the street in violation of a statute, then the court was "obliged to say the truck was a condition and not a cause." (*Id.* at p. 351.) The court observed that the location of the truck was disputed, and that the drivers could likely have seen each other if the truck was parked where the defendant claimed.

Our purpose in recounting these precedents has not been to evaluate the results they reached on their individual facts or to suggest how any particular case should be decided, but only to show that we have found relatively little support for Safeway's legal parking defense in cases involving the kind of accident that occurred here. We do note, however, that in cases where a duty has been recognized the courts have cited some of the same considerations we have found to be relevant. (*Atlantic, supra,* 591 A.2d at p. 512 [size of tractor-trailer]; *Nichols, supra,* 621 N.E.2d at p. 741 [high-speed road]; *Boese, supra,* 300 S.W.2d at pp. 457, 458 [safe parking spot available]; *Nichols,* at p. 741 [same].)

Moreover, imposition of a legal duty under the particular facts of this case does not necessarily impose liability on the driver. A jury determines fault after consideration of all the evidence, as we now explain.

### (2) *Proximate Cause*[4]

■ Safeway contends that the evidence was insufficient as a matter of law to support the proximate cause element of plaintiffs' case. "To prevail in an action for negligence, the plaintiff must demonstrate that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injuries." (*John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1188 [45 Cal.Rptr.3d 316, 137 P.3d 153].) While the existence of a duty is a question of law for the court (*ibid.; Bily, supra,* 3 Cal.4th at p. 397), proximate causation is generally a question of fact for the jury (*Hoyem v. Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 520 [150 Cal.Rptr. 1, 585 P.2d 851]). The jury found that Wilburn's negligence in parking was a substantial factor in causing plaintiffs' harm, a 35 percent contributing factor. This finding, supported by the evidence, satisfied the first element of proximate cause, which asks whether the defendant's conduct was a "cause in fact" of the injury. (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1052–1054 [1 Cal.Rptr.2d 913, 819 P.2d 872]; *PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 315 [84 Cal.Rptr.2d 455, 975 P.2d 652].)

---

[4] The concept of proximate cause as a jury instruction has been replaced by cause as a substantial factor in causing harm. (6 Witkin, Summary of Cal. Law, *supra,* Torts, § 1187, pp. 554–557; CACI No. 430.)

Safeway bases its argument on the second, " 'normative or evaluative,' " element of proximate cause, which asks, as a matter of policy, whether the defendant should be held responsible for the damage its negligence has caused. (*Jackson v. Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830, 1847 [20 Cal.Rptr.2d 913] (*Jackson*).) Safeway maintains that it should be not be liable for the consequences of Wilburn's negligence because it "was entitled to expect that other parties would act reasonably . . . . There was no evidence here . . . that Safeway had any reason to expect that the public authorities would permit parking in an unsafe spot or that Kite would proceed into a busy highway without ensuring clear sight. Accordingly, the degree of connection between Safeway's conduct and this accident is attenuated. Given that and other policy considerations discussed in the duty analysis, proximate causation is lacking here as a matter of law."

Safeway's argument that proximate cause was lacking because CalTrans negligently failed to prohibit parking in the spot Wilburn used is the same argument Safeway raised on the issue of duty, i.e., that it should be exonerated from liability because Wilburn was legally parked. We have already addressed and rejected that argument in our discussion of the duty issue.

■ As for Kite's failure to exercise due care, Safeway acknowledges that "in some circumstances proximate causation may be established notwithstanding an intervening act of negligence." "Third party negligence which is the immediate cause of an injury may be viewed as a superseding cause when it is so highly extraordinary as to be unforeseeable. [Citations.] 'The foreseeability required is of the risk of harm, not of the particular intervening act. In other words, the defendant may be liable if his conduct was "a substantial factor" in bringing about the harm, though he neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred.' [Citation.] It must appear that the intervening act has produced 'harm of a kind and degree so far beyond the risk the original tortfeasor should have foreseen that the law deems it unfair to hold him responsible.' [Citation.] [¶] . . . [F]oreseeability is a question for the jury unless undisputed facts leave no room for a reasonable difference of opinion. [Citations.] Thus, the issue of superseding cause is generally one of fact. [Citations.]" (*Torres v. Xomox Corp.* (1996) 49 Cal.App.4th 1, 18–19 [56 Cal.Rptr.2d 455], italics omitted.)

■ In this case, it could hardly be argued that the risk of the harm that befell plaintiffs was as a matter of law unforeseeable. Plaintiffs colliding with a negligent driver whom they could not see in time to avoid was precisely the kind of risk that obstructing oncoming views at the intersection created.

Safeway thus eschews any discussion of superseding cause and cites instead the principle embodied in CACI No. 411 that "[e]very person has a right to expect that every other person will use reasonable care and will not violate the law, unless he or she knows, or should know, that the other person will not use reasonable care or will violate the law." However, this expectation does not exonerate a defendant whose "conduct has created or increased the risk of harm . . . ." (Rest.2d Torts, § 449, com. a, p. 483.) " 'If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortuous, or criminal does not prevent the actor from being liable for harm caused thereby.' (Rest.2d Torts, § 449; Bigbee[, supra, 34 Cal.3d at p.] 58.)" (Judicial Council of Cal. Civil Jury Instns. (2010) Sources and Authority for CACI No. 411, pp. 254–255.)

The allegedly remote connection between Wilburn's conduct and plaintiffs' injuries was an argument for the jury because the evaluation of cause as a substantial factor in causing an injury is ordinarily a question of fact for the jury. (6 Witkin, Summary of Cal. Law, supra, Torts, § 1184, p. 551.) By way of example, summary judgments for defendants who exposed plaintiffs to harm from negligent motorists have been reversed where the connections between the negligence and the harm were more attenuated than the one here. In Bigbee, the plaintiff was in a phone booth near a busy street when an intoxicated driver lost control of the car and crashed into the booth. The plaintiff alleged that the phone company had negligently located the phone booth too close to the street, and the court held that the foreseeability of the harm was a triable issue of fact. (Bigbee, supra, 34 Cal.3d at p. 60.) In Jackson, the driver of a truck with an electrical system that failed was standing by the disabled truck on the shoulder of the road when he was struck by a motorist who was speeding and had apparently fallen asleep at the wheel. The plaintiff sued the company that maintained the truck for negligent failure to fix a long-standing problem with the electrical system, and foreseeability of the harm was held to be a jury issue. (Jackson, supra, 16 Cal.App.4th at p. 1849.)

The evidence was sufficient to support the submission of cause to the jury and the finding of cause in this case.

B. *Plaintiffs' Appeal**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, ante, page 400.

## III. DISPOSITION

The judgment, and the order denying the motions for expert witness fees and prejudgment interest, are affirmed. Safeway will bear plaintiffs' costs associated with Safeway's appeal. Plaintiffs will bear Safeway's and CalTrans's costs associated with plaintiffs' appeal.

Margulies, J., and Dondero, J., concurred.

The petitions of all appellants for review by the Supreme Court were denied March 16, 2011, S190458.